**STATE of Tennessee, Appellee,**

v.

**Ruble Ralph THOMAS, Jr., and Debra Lentz, Appellants.**

Court of Criminal Appeals of Tennessee, at Knoxville.

March 20, 1991.

Permission to Appeal Denied by Supreme Court Sept. 9, 1991.

Ben W. Hooper, II, Newport, for appellant Thomas.

Tim S. Moore, Newport, for appellant Lentz.

Charles W. Burson, Atty. Gen. and Reporter, Amy L. Tarkington, Asst. Atty. Gen., Nashville, Al Schmutzer, Jr., Dist. Atty. Gen., Sevierville, for appellee State of Tenn.

## OPINION

WADE, Judge.

Ruble Ralph Thomas, Jr., was convicted of possession of cocaine in excess of 30 grams with the intent to sell and deliver and sentenced as a Range I offender to a term of 25 years. Debra Lentz[1] was convicted of possession of cocaine with intent to sell and deliver and, as a Range I offender, was sentenced to a term of seven years. The sentences were ordered to be served consecutively with those imposed against each defendant for prior Georgia convictions. The issues defendant Thomas presents for review are as follows:

(1) whether the search warrant was sufficiently specific to establish the confidential informant's basis of knowledge;

(2) whether the trial court should have disclosed the identity of the confidential informant and granted an in camera interview regarding the information alleged in the affidavit.

Lentz joins in Thomas' second issue, challenges the sufficiency of the evidence, and presents the following additional issues for review:

(3) whether the information upon which the search warrant was issued was stale, thereby necessitating suppression of the evidence;

(4) whether the search was impermissibly general in nature and whether the officers exceeded the scope of the search warrant's authority by examining the contents of Lentz's pocketbook;

(5) whether the search warrant was invalid because of the unreliability of the informant and material representations and omissions in the affidavit;

(6) whether the defendant Lentz was erroneously denied a preliminary hearing, her right to counsel, and a right to speedy trial;

(7) whether the district attorney general was guilty of prosecutorial misconduct during final argument; and

(8) whether the sentence was excessive.

We affirm as to Thomas. We find, however, that the trial court should have suppressed the evidence used to convict Lentz. Her conviction is reversed and the cause is remanded.

On November 20, 1987, a search warrant was issued for the defendant Thomas' residence based upon the following affidavit:

[Affiant has received reliable information from] [a] reliable and confidential informant that Chip Thomas, alias was keeping cocaine on his premises. Said informant has been on the above mentioned premises within the past ten (10) days and saw a large quantity of cocaine. Said informant is a member of the drug culture and is familiar with the substance, cocaine. Chip Thomas, alias referred to the white powder like substance seen by the informant as "coke." Information received from said informant in the past has resulted in the confiscation of illeg[a]l drugs and two convictions in a court of law. Your affiant [Detective George Grooms] received this information on November 20, 1987.

There was proof at both the suppression hearing and the trial regarding the issuance of a search warrant. Detective Grooms, in charge of this investigation, had employed the confidential informant in several prior cases over a period of two to three years. In this instance, he paid the informant $250.00 for the information leading to the defendants' arrest. Grooms stated that the informant acquired the information within the ten-day period prior to the search but did not reveal the specific

---

**1.** The trial court granted Lentz's motion for judgment of acquittal as to the 499.9 grams of cocaine for which Thomas was convicted.

date. Because the informant expected that Thomas intended to acquire more drugs during a trip to Florida, he suggested that the detective wait until Thomas' return to search the residence (that comment, however, was not included in the warrant's affidavit).

It was stipulated that each of the defendants had been in Miami for the five days immediately prior to the search. Thomas, accompanied by Lentz, returned to this state in the early morning hours of November 20. When the officers arrived to execute the warrant on the afternoon of that date, Lentz, who had just awakened, answered the door dressed in a nightshirt. When officers asked for Thomas, she directed them to the residence's only bedroom where Thomas was still asleep. They immediately seized a 9 mm. pistol located near the bed. Underneath the weapon, officers found a Tupperware container containing a compressed block of 77.4 percent pure cocaine weighing 499.9 grams wrapped in plastic and newspaper.

Officers next seized a woman's purse located on the bedroom floor. They discovered it contained $3,108.00 in cash, a vial of 76.6 percent pure cocaine weighing 6.4 grams, a gun holster and Lentz's identification.

As they continued their search of the residence, the officers found two cocaine grinders, several zip-lock plastic bags, a triple beam scale, mirrors and straws (often used to facilitate cocaine use), a police scanner, a book entitled *The Complete Guide to the Street Drug Game*, handwritten records of Thomas' various drug transactions, and a bullet-proof vest. The cocaine seized by the officers had an estimated street value of between $100,000.00 and $120,000.00.

Detective Grooms testified that there was no way of knowing whether the block of cocaine taken in the search was the same as that referred to by his confidential informant. The trial court would not permit defense counsel to question Grooms about the specific date the informant visited the Thomas residence for fear that it would reveal his identity.

Shortly after the defendants' arrests for these charges, they made bond and went to Georgia. Within three weeks, Lentz and Thomas were arrested in Atlanta for the possession of cocaine and approximately 32 grams of marijuana. They were held without bond, tried, and ultimately convicted.

■ We first consider Lentz's challenge to the sufficiency of the evidence. It is predicated upon her contention that the state failed to show the 6.4 grams of cocaine found in her pocketbook was for anything other than personal use. Detective Grooms, however, stated that the amount was unusually large for a user to possess. The considerable cash found in the pocketbook is also a circumstance suggesting an intention to sell and deliver. The gun displayed in the bedroom near the bed, the holster found in Lentz's possession, the defendants' extensive travel in the days before her arrest, and the drug materials and other paraphernalia seized from the Thomas residence all indicate something more than mere possession of the cocaine.

We think this evidence, when viewed most favorably to the state, is sufficient for a rational trier of fact to have found the essential elements of the crime beyond any reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 309, 99 S.Ct. 2781, 2782, 61 L.Ed.2d 560 (1979); Tenn.R.App.P. 13(e).

### *Search Warrant*

Thomas contends the search warrant failed to adequately establish the basis for the informant's knowledge. Lentz argues that the informant was unreliable, the information stale, and the warrant too general; she alleges that the officers exceeded the scope of the warrant's authority by searching her pocketbook. Both defendants assert that the trial court should have required disclosure of the identity of the informant and ordered an in camera interview.

In *State v. Jacumin,* 778 S.W.2d 430 (Tenn.1989), our Supreme Court adopted the two-prong test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States,* 393

U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), as the guideline for determining probable cause for the issuance of a search warrant. In *Aguilar,* the United States Supreme Court held that there must be a "basis of knowledge" when the officer relies on hearsay information from a confidential informant:

> [T]he magistrate must be informed of *some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were,* and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed ... was "credible" or his information "reliable."

378 U.S. at 114, 84 S.Ct. at 1514 (Emphasis added).

The search warrant in *Aguilar* was held invalid because nothing in the affidavit established that the affiant had personal knowledge of the matter attested to or that the affiant's source spoke from personal knowledge rather than mere suspicion. *Aguilar,* 378 U.S. at 113, 84 S.Ct. at 1513.

In *Spinelli,* the affidavit upon which the search warrant was based did not provide the magistrate any reason to support the officer's conclusion that the informer was reliable, nor did it contain a sufficient statement of the underlying circumstances from which the informer concluded that *Spinelli* was running a bookmaking operation. *Spinelli,* 393 U.S. at 416, 89 S.Ct. at 589.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the information supporting the issuance of the search warrant was received in an anonymous letter. There was nothing upon which the investigating officers or the magistrate who ultimately issued a search warrant could conclude that the author was reliable. Significantly, the information supplied did not indicate the basis for the writer's predictions as to the future drug transaction. Yet, because of the "totality of the circumstances," the warrant was upheld. In *Jacumin,* our Supreme Court compared the language of the United States Constitution with Art. 1, § 7 of the Tennessee Constitution:

> We are ... of the opinion that the *Aguilar–Spinelli* standard, or test, is more in keeping with the specific requirement of Art. 1, Section 7 of the Tennessee Constitution that *a search not issue "without evidence of the fact committed."* Consequently, we adopt the two-pronged standard voiced in *Aguilar* and *Spinelli* as the standard by which probable cause will be measured....

778 S.W.2d at 436 (Emphasis added).

Our Supreme Court set aside Jacumin's conviction because the "basis of the informants' knowledge" was not set out in the affidavit, nor was there any basis to establish the informants' credibility. It did, however, hold that subsequent observations by police officers, if detailed in the affidavit, might be sufficient corroboration to satisfy the "basis of knowledge" standard. A warning was issued in *Jacumin* for courts not to apply the two-prong test "hypertechnically." *Id.* at 436.

■ Thomas concedes the confidential informant's reliability but contends that the search warrant was not sufficiently specific to demonstrate the informant's basis of knowledge. He points out that the warrant failed to indicate the actual date the information was acquired, where the cocaine was kept and whether Thomas possessed it. He also argues that the affidavit contains no details of any police corroboration.

We disagree. The "evidence of the fact committed" was that the informant had been on the Thomas property within ten days prior to the affiant's signing the affidavit, had observed "a large quantity of cocaine," and heard Thomas refer to it as "coke." More importantly, the informant swore that he knew cocaine when he saw it and stated why. The affidavit need not be so specific to "contain conclusive allegations of guilt ... [but only] information upon the basis of which a neutral and detached magistrate could find probable cause for the issuance of the search warrant." *State v. Bryan,* 769 S.W.2d 208, 210–211 (Tenn.1989). Further, *Jacumin*

warns that the tests should not be "hyper-technically applied" and that, on appeal, the probable cause determination by the magistrate is entitled to deferential treatment. *Jacumin*, 778 S.W.2d at 431–32. Under these circumstances, we think that the magistrate could have reasonably concluded that the informant had first-hand knowledge that Thomas had cocaine at his residence.

Thomas next asserts that the informant provided "false, misleading or recklessly made statements." The trial court found that "other than the bare allegation that this could not be true, there is nothing to indicate that there is any false swearing, fabrication, or deceit in the affidavit...." Thomas' position is based upon his assertion that he had acquired the cocaine (that later found in his possession) in Florida and did not return to Cocke County until 4:00 or 5:00 A.M. on the date of the search; he contends that it would have been impossible for anyone to have seen the seized cocaine at any time after his return to this state.

■ Finally, he argues that officers found a compressed block of cocaine, not the "white powder-like substance" described in the warrant. These contradictions, Thomas argues, should have prompted the court to conduct an in camera interview with the informant as a means of determining whether the privilege of non-disclosure of the informant's identity was outweighed by the defendants' entitlement "to a fair determination." *See Roviaro v. United States*, 353 U.S. 53, 60, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957).

Unsupported allegations of misconduct cannot overcome an affidavit sufficient on its face. *State v. Cannon*, 634 S.W.2d 648, 650 (Tenn.Crim.App.1982); *see Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In *Cannon*, it was held that a facially valid search warrant may only come under attack when the defense establishes that the search warrant was procured by officers through perjury or coercion. *Id.* at 650. In *State v. Little*, 560 S.W.2d 403 (Tenn.1978), our Supreme Court held that the search warrant's affidavit may be impeached only when (1) a false statement was made with the intent to deceive the court, whether material or immaterial to the issue of probable cause or (2) a false statement, essential to the establishment of probable cause, was recklessly made. *Id.* at 407; *see State v. Brown*, 618 S.W.2d 325 (Tenn.Crim.App. 1981).

The affidavit provided that the informant had seen cocaine at the Thomas residence sometime between November 10 and 20. The proof was that Thomas and Lentz had been away from the residence for five days immediately prior to the search. Assuming the truthfulness of defendant's statement, the informant still had a five-day window of opportunity to have observed the cocaine. It is entirely possible that the cocaine seized on November 20 was not the same as that observed by the informant. The state concedes that the officer preparing the affidavit did not include the informant's suggestion that the execution of the warrant take place after Thomas returned from Florida. There is no requirement, however, to include any information beyond the establishment of probable cause. Further, the alleged misrepresentations and omissions do not reflect upon the informant's reliability. The fact that the informant had provided information in the past which was verified by subsequent criminal convictions was sufficient.

In *State v. Ash*, 729 S.W.2d 275 (Tenn. Crim.App.1986), former Presiding Judge Duncan considered issues similar to those presented here:

The State's privilege to withhold the identity of an informant yields when the defendant can show that the informant was a witness or a participant in the crime and thus, a material witness ... (Citations omitted).

*The defendant does not contend that the informant was a participant in the crime, or that he was a material witness to the facts surrounding the actual search of the defendant's premises; rather, the defendant merely wanted the informant revealed in order to attack the validity of the search warrant.* For the same reasons stated in our dis-

cussion of the defendant's first issue [that the search warrant was invalid because it was issued upon the false information that the informant lied about having seen the defendant within the 72 hours sworn to in the affidavit], the defendant was not entitled to have the informant's identity revealed for this purpose.

The decision on whether or not to reveal an informant is within the trial court's discretion. We find no abuse of discretion in this case.

729 S.W.2d at 278 (Emphasis added).

We find no distinction between the circumstances here and those in *Ash*. Thomas' and Lentz's claims, that the trial court erred in failing to disclose the identity of the informant, have no merit.

Lentz argues that the information upon which the search warrant was based was too stale to have provided adequate probable cause. She cites *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932) as the lead case on the issue:

While the statute does not fix the time within which proof of probable cause must be taken by the judge or commissioner, it is manifest that the proof must be facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case.

53 S.Ct. at 140.

In *Welchance v. State*, 173 Tenn. 26, 114 S.W.2d 781 (1938), it was held that "[n]o hard and fast rule ... can be established, except that it should not be too remote." 114 S.W.2d at 782. *Welchance*, decided during the Prohibition era, held that the affidavit was defective for failing to provide any time reference to the defendant's alleged unlawful possession of liquor.

When the illegal activity described is ongoing, courts have generally held that the affidavit does not become stale with the passage of time. *See United States v. Paul*, 692 F.Supp. 186, 192 (S.D.N.Y.1988). The information here is that Thomas "was keeping" cocaine on the premises. While the defendant insists that "is keeping" would have been more appropriate to indicate a continuing activity, we do not interpret the term in such a limited fashion. More importantly, even if the delay between the observance and the application for the search warrant was the full 10 days, we do not think that as inordinately long under these circumstances. *Hicks v. State*, 194 Tenn. 351, 250 S.W.2d 559 (1952). This meets the test set out in *State v. Baker*, 625 S.W.2d 724 (Tenn.Crim.App. 1981), wherein it was held that "a specific date in the affidavit setting out when the illegal activity was observed is not required if the affidavit sets out sufficient facts from which the magistrate ... could find probable cause to believe the illegal activity ... [is] ... present on the premises when the search warrant is issued." *Id.* at 726.

Lentz also argues that the search warrant issued was unconstitutionally general in nature. U.S. Const. IV; Tenn. Const. art. I, § 7. Her final contention is that the search warrant, even if sufficient to authorize a search of the Thomas residence, did not extend to the officers' search of her pocketbook.

The warrant authorized the investigating officers "to make immediate search of [Thomas] and [his] premises for the [cocaine]...." Lentz's purse was found on the floor of the bedroom near the bed. She was a visitor to the residence. She had spent the night there and answered the door when officers knocked. Few of her personal articles were inside. Most of her items were in a car parked outside the residence. The nature and extent of her relationship with Thomas was not known. She sat in the living room as officers conducted the search.

The defendant cites *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), in support of her argument. In that case, officers obtained a search warrant for a tavern and its bartender. After their arrival, officers searched several of the tavern's customers, including Ybarra, and found heroin in his pocket. The Supreme Court held the search was illegal because

the officers had no reason to believe Ybarra was in any way involved in the suspected criminal activity at the tavern. The court concluded that a "warrant to search a place cannot normally be construed to authorize a search of each individual in that place." 100 S.Ct. at 342–343, n. 4.

The state answers that the search of the pocketbook was justified under two theories:

(1) that the purse was a reasonable place for cocaine to be hidden in the Thomas residence; and

(2) that incident to Lentz's arrest for her participation in the possession of the 500 grams of cocaine, officers were entitled to make a warrantless search of the area within her immediate control.

■ Initially, we hold that the warrant's authorization was not overly broad. Its scope, in fact, was rather specific in that it authorized only the search of Thomas and his premises for cocaine.

Our principal concern, therefore, is "the extent to which a warrant to search [the] premises [of another] permits a search of persons or personal belongings." *United States v. Neet,* 504 F.Supp. 1220 (1981). There are few cases on the subject. We found no published opinions in our state and have sought guidance from the reported opinions of other jurisdictions.

In *United States v. Teller,* 397 F.2d 494 (7th Cir.), *cert. denied,* 393 U.S. 937, 89 S.Ct. 299, 21 L.Ed.2d 273 (1968), the court upheld a seizure of the contents of a woman's purse pursuant to a warrant authorizing a search of the premises only. The essence of the ruling was that the purse was no longer an "extension of [her] person" when the woman put her purse down in one room and left for another. Because, however, *Teller* appeared to base its conclusions solely on her lack of physical possession at the time the search was executed, the decision was criticized in later opinions as providing an unworkable standard.

In *United States v. Micheli,* 487 F.2d 429 (1st Cir.1973), a different test was developed for determining whether personal effects were beyond the authority of a premises search warrant:

It should not be assumed that whatever is found on the premises described in the warrant necessarily falls within the proper scope of the search; rather, it is necessary to examine why a person's belongings happen to be on the premises.... [T]he protective boundary established by requiring a search warrant should encompass those extensions of a person which he reasonably seeks to preserve as private, regardless of where he may be.

*Id.* at 432.

*Micheli* deemed "the relationship between the person and the place" the critical consideration. *Id.* at 431. A distinction was made between the occupant of the residence, who has no greater privacy interests in his personal belongings than his residence, and the "visitor," who continues to have an expectation of privacy in personal effects regardless of where they have been temporarily placed. *Id.* Ultimately, the court determined that searches of a visitor's personal effects should "be appraised by reference to the [visitor's] reasonable expectations of privacy...." *Id.* at 432.

In *United States v. Branch,* 545 F.2d 177 (D.C.Cir.1976), the *Micheli* test was used in determining that the issuance of a premises warrant did not authorize the search of "a mere visitor's shoulder bag"; his relationship to the premises "was at best the subject of speculation." *Id.* at 182. *Branch,* while helpful, is not necessarily on point. The defendant was holding the bag at the time the search was conducted; we speculate that the search would have been held invalid under either the *Teller* or the *Micheli* standard. Lentz, of course, was in the living room when officers found her purse in the bedroom and then searched it.

In *United States v. Neet,* 504 F.Supp. at 1220 (1981), the court considered the rationale underlying each test. *Neet* was the owner of the residence searched and Miller, a co-defendant, had arrived just prior to the execution of the warrant.

*[V]irtually nothing was known about her except that she was present in the house when it was secured. No circumstances known to the officers when they entered the house, or when they first detained her, indicated her involvement in drug dealing.* In short, the officers had little or no evidence to justify detaining Miller for a time longer than reasonably necessary to obtain her identification and perhaps an explanation of her presence. Since she was not allowed to leave after that was accomplished, the court finds that she was thereafter under arrest and that her arrest was unlawful because based on neither probable cause nor an arrest warrant.

*Id.* at 1226 (Emphasis added).

As in this instance, officers found cocaine in Miller's purse. The search warrant issued, considered overbroad because it extended to persons without the requisite probable cause, was upheld as to the Neet "premises." Applying the *Micheli* test of whether Miller had a "legitimate expectation of privacy that placed [her purse] beyond the scope of the warrant," the court found that she was a "mere visitor" and the search of her purse was not authorized by the premises search warrant:

> Nothing in the affidavit in support of the warrant, or in the knowledge of any of the officers, gave any indication of Miller's involvement in any narcotics transaction or other illicit venture. The officers did not know who Miller was or what her relationship to the premises was, if any.... [T]here was not the inference ... that she could be involved as a courier.

The facts here are practically undistinguishable from those existing in *Neet.* Yet the "expectation of privacy" test may be too restrictive for law enforcement to reasonably implement. In the case of *People v. McCabe*, 144 Cal.App.3d 827, 192 Cal. Rptr. 635 (1983), police obtained a search warrant providing for the seizure of cocaine and other drugs at a premises shared by three individuals. McCabe, who was not a resident, was in the kitchen when the police arrived. Her purse was on a table in

the living room. Two of the three residents were also present. One of the officers opened McCabe's purse, saw her driver's license, and found cocaine. The search of the residence yielded cocaine, marijuana, and drug paraphernalia.

■ The California court held that the police may, while executing a premises search warrant, lawfully search the personal effects of a visitor, on the proper assumption that all personal property belongs to the resident of the premises, under specific conditions:

> (1) if the visitor's personal items might serve as a plausible repository of the object of the search, it may nonetheless be seized unless officers know the property belongs to the visitor;
>
> (2) if officers know the property belongs to the visitor, they may not rely on the authority conferred by the search warrant even though it is a plausible repository for the contraband; and
>
> (3) if someone within the premises has had the opportunity to conceal the contraband within the personal effects of the visitor immediately prior to the execution of the search warrant, officers may nonetheless conduct the search.

*Id.* 192 Cal.Rptr. at 636–637; *See* 2 LaFave, *Search and Seizure* § 4.10(b) (1987).

■ We think the *McCabe* rule, which provides specific guidelines to the officers executing the search warrant, is most useful in determining how far a premises warrant may extend. *See People v. Reyes*, 223 Cal.App.3d 1218, 273 Cal.Rptr. 61 (5 Dist. 1990). In this case, the Lentz purse appears not to have been a "plausible repository" for the drugs thought to be at the residence. Even if it was, Thomas was the only other occupant of the residence; he would not reasonably be expected to own a woman's pocketbook. The circumstances do not suggest that either Lentz or Thomas had concealed the cocaine in the purse at anytime between the officers' arrival and the search of the property. Lentz had gotten out of bed only to answer the door. Thomas was still asleep. By all appearances, the officers achieved total surprise. Certainly no attempt had been made by

either defendant to hide either the gun or the large quantity of packaged cocaine within Thomas' reach.

In *State v. Nabarro*, 55 Haw. 583, 525 P.2d 573 (1974), the court held as follows:

[P]olice cannot realistically be expected to avoid searching the property of a mere visitor to the premises unless they are aware of its ownership. Absent a requirement of such awareness, the effective execution of a warrant to search a place would be impossible since the police could never be sure that a plausible repository for items named in the warrant belongs to a resident, and hence is searchable, or to a non-resident, and hence is not searchable. Because of this, *without notice of some sort of the ownership of a belonging, the police are entitled to assume that all objects within the premises lawfully subject to search under a warrant are a part of those premises for the purpose of executing the warrant....*

*Id.* 525 P.2d at 576–577 (Emphasis added).

Our review of these cases suggests that this is a practical approach for determining the scope of a search. This case turns, we think, on whether the officers executing the warrant knew or should have known (1) that Lentz rather than Thomas owned the purse; and (2) that, under the circumstances, there was no opportunity for anyone to have hidden the cocaine suspected on the premises. Using the *McCabe* analysis, we would conclude that the search of Lentz's pocketbook was beyond the authority granted by the premises search warrant.[2]

■ Our final consideration is whether there was probable cause to arrest Lentz, a person other than the occupant found at the place to be searched. 2 LaFave, *Search and Seizure* § 3.6(c) (1987). That is, if grounds existed either before or reasonably contemporaneous with the search

of her purse and her purse was within her immediate control,[3] then the search was properly incident to arrest. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964).

There is probable cause, under circumstances similar to these, to arrest one who is continually present at a place of regular criminal activity. *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). When, however, there is little contact with the premises subjected to the search, that is generally insufficient for an arrest. *United States v. Capers*, 685 F.2d 249 (8th Cir.1982). In *Ybarra*, the court held that when the premises search warrant's affidavit made no mention of the defendant and the defendant did nothing suspicious upon entry by the police, there was no basis (absent authority under the warrant) for either his arrest or any search incident thereto.

Similarly, in *United States v. Miller*, 546 F.2d 251 (8th Cir.1976), there were no grounds to arrest a man, present during the execution of a search warrant, when his only connection was that he was visiting his girlfriend there. *See also United States v. Wynn*, 544 F.2d 786 (5th Cir. 1977). Mere companionship to the offender is insufficient to establish probable cause for arrest even when exercised at the very time of the criminal activity. *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

The proof here established that Thomas was the only suspect. Neither the warrant's affidavit nor the information known to officers at the time of the search indicated the involvement of any other person. The officers saw no one at the residence during the period of surveillance prior to the search. Discussions with the informant yielded no information about Lentz. Officers conceded that her identity was completely unknown. The record establish-

---

**2.** *See also Commonwealth v. Platou*, 455 Pa. 258, 312 A.2d 29 (1973) which suggests that police, in determining what the search warrant is intended to include, must take into account their own knowledge of the personal effects; *State v. Nabarro*, 55 Haw. 583, 525 P.2d 573 (1974), which held that "police cannot realistically be expected

to avoid searching the property of a mere visitor to the premises unless they are aware of its ownership."

**3.** *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

es that she did nothing of a suspicious nature during the execution of the search. She sat on the living room couch until she was placed under arrest.[4] The trial court characterized Lentz as a "mere visitor." The search of the purse, we must conclude, was not incident to a valid arrest. *See State v. Clark*, 312 Minn. 44, 250 N.W.2d 199 (1977).

The evidence found in Lentz's purse should have been suppressed.

## Other Issues

Although Lentz's search question may be determinative, we will consider her other issues. Lentz contends she was erroneously denied a preliminary hearing, her right to counsel, and her right to speedy trial. She argues that the district attorney general was guilty of prosecutorial misconduct during final argument and that the trial court's sentence of seven years' imprisonment was excessive.

▮ After making bond on this charge, Lentz went to Georgia, was arrested on a charge there, and ultimately convicted. As a result, her preliminary hearing was postponed on at least four separate occasions extending over a period of 19 months. She was not appointed counsel until December 6, 1988, a year after her arrest. A presentment was returned July 19, 1989. Lentz's counsel filed a motion for a preliminary hearing about a month before the trial date. When the court first considered the motion on the morning of trial, it was denied as untimely.

A preliminary hearing is not constitutionally mandated. *Vaughn v. State*, 557 S.W.2d 64 (Tenn.1977). *Vaughn* also held that the statute providing for the preliminary hearing had no application when the prosecution began by indictment.

The defendant's entitlement to a preliminary hearing is founded in Tenn.R.Crim.P. 5(d), which requires that a hearing be provided within 10 days of arrest if an accused is in custody and 30 days if not. Subsection 5(e) of the rule further provides that:

Any defendant arrested prior to indictment or presentment for any offense, whether misdemeanor or felony, except small offenses, shall be entitled to a preliminary hearing upon request therefor, whether the grand jury of the County be in session or not. If the defendant is indicted during the period of time in which his preliminary hearing is being continued, or at any time before the accused has been afforded a preliminary hearing on a warrant, whether at his own request or that of a prosecutor, he may dismiss the indictment upon motion to the court. Provided, however, that no such Motion to Dismiss shall be granted after the expiration of thirty days from the date of the defendant's arrest.

Even though the defendant is deprived of a preliminary hearing, he may not move to dismiss an intervening indictment more than 30 days from the date of his arrest. There is, however, an exception to this rule. In *Moore v. State*, 578 S.W.2d 78 (Tenn. 1979), the court held that when the state acts in "bad faith" to circumvent the preliminary hearing, the 30–day time limit does not apply. In that event, the indictment should be dismissed and the defendant provided with a preliminary hearing.

In *Moore*, the prosecutor announced ready at the preliminary hearing without having key witnesses available, intending instead to rely completely on hearsay testimony. The general sessions judge found that the evidence was insufficient to establish probable cause, and at the state's request, granted an indefinite postponement. Instead of providing Moore the preliminary hearing, however, the state waited four months and then took the case to the grand jury. Moore's indictment was returned more than 30 days after his arrest and, by the terms of the rule, apparently not subject to challenge. Yet the Supreme Court held that the state acted in bad faith there-

---

4. The officers testified that Lentz was arrested at the time they found Thomas's cocaine next to the bed in which he slept. The arrest report indicates that "[Lentz] was arrested after suspected cocaine was found in her pocketbook."

by violating the defendant's entitlement to a preliminary hearing.

We find no bad faith here. Because of her incarceration in Georgia, Lentz was simply unavailable during the lengthy delay between her arrest and indictment. Five different dates were scheduled before the matter was taken to the grand jury. In *McKeldin v. State*, 516 S.W.2d 82 (Tenn. 1974), our Supreme Court acknowledges that the preliminary hearing is a critical stage of the criminal proceeding. *See Powell v. Alabama*, 287 U.S. 45, 57, 53 S.Ct. 55, 60, 77 L.Ed. 158 (1932). The late Justice Henry noted:

> Every criminal lawyer "worth his salt" knows the overriding importance and the manifest advantages of a preliminary hearing. In fact the failure to exploit this golden opportunity to observe the manner, demeanor and appearance of the witnesses for the prosecution, to learn the precise details of the prosecution's case, and to engage in that happy event sometimes known as a "fishing expedition," would be an inexcusable dereliction of duty, in the majority of cases.

516 S.W.2d at 85.

That holding guaranteed the indigent an attorney at the preliminary hearing. Yet here Lentz made an appearance bond in Tennessee. It was not immediately apparent that she qualified for appointed counsel. The general sessions court eventually provided her with counsel. Afterwards, the preliminary hearing was scheduled and postponed four times before the matter was taken to the grand jury. Under those circumstances, we find no merit to Lentz's claim that she was unjustly denied the preliminary hearing. There is no indication the prosecution was guilty of bad faith in finally taking the matter to the grand jury.

Lentz's claim of deprivation of counsel is derivative to her demand for a preliminary hearing. We also find that claim meritless. She was appointed counsel some eight months before the indictment. We cannot assume from a silent record what, if any, strategy decisions occurred on Lentz's behalf during that period of time. The only certainty is that Lentz was represented during the several postponements of the preliminary hearing.

Lentz's claim that she was denied a speedy trial is founded in Tenn.Code Ann. § 40–18–103(a), which provides that a Class X felony trial must be within 150 days of arraignment, and Tenn.R.Crim.P. 48(b) which provides as follows:

> If there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment, presentment, information or complaint.

*See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; Tenn.Code Ann. § 40–14–101.

In *State v. Bishop*, 493 S.W.2d 81 (Tenn. 1973), the Tennessee Supreme Court adopted a four-factor test for determining whether one has been denied his right to a speedy trial. Adopting a test first established in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), our court identified the factors as

(1) the length of the delay;

(2) the reason for the delay;

(3) whether the defendant asserted his right to a speedy trial; and

(4) the prejudice which accrued to the defendant as a result of the delay.

*Bishop*, 493 S.W.2d at 84 (citing *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2192).

In *Barker*, the United States Supreme Court held that "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker*, 407 U.S. at 530, 92 S.Ct. at 2192.

Here, the defendant was arrested on November 20, 1987. Her presentment was July 18, 1989, and her trial the following September 20. Serious charges are, however, expected to take longer than "ordinary street crime[s]." *Barker*, 407 U.S. at 531, 92 S.Ct. at 2192. Because one of the charges against Lentz was a Class X felony, this case qualifies as "serious" even

though no conviction resulted from the higher level indictment. Many courts have held, under similar circumstances, that a two-year delay is not inordinately long.[5]

There is nothing in this record to suggest the reason for the delay was anything other than the defendant's incarceration in Georgia. It is a reasonable assumption that her arrest in Georgia, the denial of bond, her trial, and conviction proceeded over a period of several months, if not longer. That factor weighs against the defendant.

The defendant first asserted her right to speedy trial in January 1989, about one month after she had been appointed counsel. The presentment was approximately six months later. Three weeks later, the trial court ordered the defendant returned to this state by August 11, 1989. The preliminary hearing was scheduled and postponed several times between the demand for trial and the presentment. Although the demand for a speedy trial was clearly made, we do not think this factor necessarily weighs favorably to the defendant.

Prejudice, the most important of the considerations, is assessed in the light of three interests to the defendant:

(1) to prevent oppressive pre-trial incarceration;

(2) to minimize anxiety and concern of the accused; and

(3) to limit the possibility that the defense will be impaired.

*Barker,* 407 U.S. at 532, 92 S.Ct. at 2193.

Here, the defendant was on bond for the Tennessee charge; the pretrial incarceration resulted from the Georgia offense. Although Lentz stood publicly charged in this state for almost two years, we speculate that her primary anxieties during that period of time resulted from her arrest, incarceration, and ultimate conviction

in Georgia. Finally, the evidence in this record does not indicate that the defendant was impaired in her ability to prepare a defense. In fact, it would have handicapped Lentz if she had been forced to prepare simultaneously for the charges pending here and those in Georgia. This record does not demonstrate, by virtue of the delay, any resultant prejudice in her preparation for trial. We therefore find no deprivation of Lentz's right to a speedy trial.

Lentz next argues that the prosecutor was guilty of misconduct during final argument. Her counsel made objections at trial to the following statements:

> [T]here's no evidence in this record whatever, that that money goes to anything but the Cocaine that was right there with it, because it's what comes from that witness stand, not what's asked by lawyers or what might be suggested that's proof. And there was absolutely nothing come from that stand to tell you that the $31,000.00 [sic] that was found with the Cocaine was anything more than the product of the sale of Cocaine. And I submit to you, they're good lawyers, they would have certainly been there if there had been something to show.

> \* \* \* \* \* \*

> [T]hese officers got two drug dealers right here in your community. That is the only reasonable explanation, that's the only thing that common sense says. No guesswork, no speculation there as to those facts, they speak for themselves and they stand unchallenged.

The trial court overruled defense counsel's objection and instructed the jury that the prosecutor was not and could not comment on Lentz's failure to testify:

> You've been instructed about the right to remain silent, the right not to testify....

---

5. For examples, *see State v. Kolb,* 755 S.W.2d 472 (Tenn.Crim.App.1988), a delay of over five years; *State v. Bishop,* 493 S.W.2d 81 (Tenn.1973), a delay of two years; *State v. Blackmon,* 701 S.W.2d 228 (Tenn.Crim.App.1985), a delay of nine months; *Cunningham v. State,* 565 S.W.2d 890 (Tenn.Crim.App.1977), a delay of almost two years; *Farr v. State,* 506 S.W.2d 811 (Tenn.Crim.App.1974), a delay of thirteen months; *State v. Walton,* 673 S.W.2d 166 (Tenn.Crim.App.1984), a delay of two years; *State v. Baker,* 614 S.W.2d 352 (Tenn.1981), an eighteen month delay delay between the offense and presentment; and *Dykes v. State,* 589 S.W.2d 384 (Tenn.Crim.App.1979), a delay of two years.

They didn't testify, they've got a right not to. You've been told that time and again, and you may proceed.

The following additional argument by the state followed:

> But that doesn't preclude them from, if they want to, to present other evidence from other people and that's what I mean about being unchallenged. No one took the stand to tell you in opposition to George Grooms that ... that amount was consistent with personal use. No one took the stand to refute the officers or refute anyone about the amount of Cocaine seized or about what the scales are used for to weigh it out, what the baggies are used for. No one took the stand to refute any of that.
>
> \* \* \* \* \* \*
>
> The State has in fact carried the burden of proof and there's no other reasonable explanation, none given, but that in fact both these defendants are guilty as charged.

Lentz also objects to other portions of the final argument including the prosecutor's statement that the defendants "were two drug dealers in bed together, and they're here on trial together."

In proper context, the comments were made in response to Lentz's argument that the cocaine was for her personal use only and that she should be found guilty of possession of cocaine, a misdemeanor, rather than possession with intent to sell and deliver. Detective Grooms had testified that the amount of cocaine found in Lentz's purse was too large to be consistent with personal use only.

■ The fifth amendment to the United States Constitution and article 1, section 9 of the Tennessee Constitution guarantee the right to remain silent. In *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the United States Supreme Court held that a prosecutor cannot comment in final argument upon the accused's failure to take the stand in his own defense. This has been the long-standing rule in Tennessee. *Staples v. State,* 89 Tenn. 231, 14 S.W. 603 (1890). Tenn.Code Ann. § 40–17–103 provides that "failure of the ... defendant ... to testify in his behalf shall not create any presumption against him."

■ Yet it has also been held that "[m]ere argument by the State that proof on a certain point is unrefuted or uncontradicted is not an improper comment upon a defendant's failure to testify." *State v. Coury,* 697 S.W.2d 373, 378 (Tenn.Crim. App.1985) (Citations omitted). Although it's often difficult to distinguish the exception from the rule, it is our opinion that this final argument was directed toward the cash found in Lentz's pocketbook, the scales and the baggies found in the residence, and the detective's testimony that 6.4 grams was too much to be considered personal use. These are all points in the evidence from which the jury could permissibly infer that Lentz's possession was with the intent to sell or deliver. We find no merit to this issue.

There were no objections to the two references the prosecutor made to the defendants "being in bed together." The defendant did not object to the prosecutor's statement that "a good defense lawyer wants ... to get you to run rabbits." The failure to make a contemporaneous objection serves as a waiver. *State v. Compton,* 642 S.W.2d 745, 747 (Tenn.Crim.App. 1982); *State v. Duncan,* 698 S.W.2d 63 (Tenn.1985).

Finally, Lentz argues that her seven-year sentence, the maximum possible, was excessive. Because the sentencing hearing was conducted prior to November 1, 1989, our review is *de novo* without a presumption of correctness. Tenn.Code Ann. § 40–35–402(d); *State v. Moss,* 727 S.W.2d 229, 238–239 (Tenn.1986).

Our *de novo* review requires an analysis of all the evidence, presentence report, the principles of sentencing, the arguments of counsel relative to sentencing alternatives, the nature and characteristics of the offense, any mitigating or enhancing factors, any statements made by the defendant in his own behalf, and the defendant's potential or lack of potential for rehabilitation or treatment. Tenn.Code Ann. § 40–35–103;

Tenn.Code Ann. § 40–35–210; *State v. Smith,* 735 S.W.2d 859, 863 (Tenn.Crim. App.1987).

■ Initially, Lentz complains that the presentence report should have been made a part of the record. That is not the state's responsibility. The appellant must prepare a fair, accurate record of the portions of the trial relating to the issues on appeal. *State v. Arnold,* 719 S.W.2d 543, 546 (Tenn.Crim.App.1986).

■ Lentz also complains that her sentence should have been concurrent with that she received as a result of her Georgia conviction. It is deemed consecutive "unless the court shall determine in the exercise of its discretion that good cause exists to run the sentences concurrently and explicitly so orders." Tenn.R.Crim.P. 32(c)(2). The trial court made no such determination.

There are mitigating factors. Lentz has two young children. She has tested positive for the HIV virus which, she claims, was the result of a blood transfusion. Her participation in the offense may have been due, in part, to her drug dependency. Thomas admitted that he was the leader in the commission of the offense. By the time Lentz was sentenced on September 27, 1989, she had served between 20 and 21 months on the 15–year sentence she received in Georgia.

On the other hand, the defendant participated in the transportation of a significant amount of cocaine from Florida to this state. She independently possessed more cocaine than necessary for mere personal use. Absent the intervention of law enforcement, the alleged drug would likely have been distributed or sold. While on bond for this charge, she was arrested for the possession of a pound of cocaine; a significant amount of marijuana was also found in her possession. She had been convicted of that crime by the time she went to trial on this case.

The defendant's dependence on drugs neither lessens nor excuses her behavior. The nature and the circumstances of the offense are not favorable to Lentz. Deterrence is an important factor. Lentz's other criminal activity does not reflect well on her potential for rehabilitation. If the defendant did not actually possess the firearm found at the time of her arrest, she certainly had access to it. In conclusion, we would have fully approved of the seven-year sentence had the cocaine evidence been properly admitted. Further, we would have found no basis to order the sentence concurrent with that she received in Georgia.

Although we find no merit to Lentz's other issues, we reverse her conviction on the search question. The cause is remanded for any further action on the part of the state. Thomas' conviction is affirmed.

BIRCH and TIPTON, JJ., concur.