IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

MARCH 1997 SESSION

FILED

November 20, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 02C01-9605-CR-00153 |
| Appellee, | * | SHELBY COUNTY |
| VS. | * | Hon. John P. Colton, Jr., Judge |
| ANTHONY D. CUTTLE, | * | (Attempted Especially Aggravated |
| Appellant. | * | Kidnapping) |
| | * | |

For Appellant:

A. C. Wharton
Shelby County Public Defender
(on appeal)

Walker Gwinn
Assistant Public Defender
Second Floor
Criminal Justice Complex
201 Poplar
Memphis, TN  38103
(on appeal)

Barry Kuhn
Assistant Public Defender
5100 Stage Road, Suite 4
Bartlett, TN  38134
(at trial)

For Appellee:

Charles W. Burson
Attorney General & Reporter

Merrilyn Feirman
Assistant Attorney General
500 Charlotte Avenue
Nashville, TN  37243

James Lammey
Assistant District Attorney General
Third Floor
Criminal Justice Complex
201 Poplar
Memphis, TN  38103

OPINION FILED: _____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Anthony Cuttle, was convicted by a jury of attempted especially aggravated kidnapping. The trial judge imposed a Range II, twenty-year sentence. In this appeal of right, the defendant presents the following issues for our review:

> (I) whether the evidence is sufficient;
>
> (II) whether his right to a speedy trial was violated; and
>
> (III) whether his sentence is excessive.

The conviction and sentence are affirmed.

On the night of April 5, 1994, the victim, Norma Voyles was sitting in her car outside her home when the defendant approached her vehicle, stuck a gun to her head, and ordered her to open the door. When the defendant insisted on taking the driver's seat, the victim struggled and managed to escape to the driveway where the defendant held his cocked gun to her head and threatened to kill her. The struggle lasted for around ten minutes before the victim's son heard the screams and emerged from their residence. At that point, the defendant pushed the victim to the ground and ran away.

The victim called police who arrived some five minutes later. When the investigating officers received word that a man fitting the assailant's description had been taken into custody, the victim was asked to make an identification. Initially uncertain, the victim made a positive identification after the defendant put on the hood of his sweatshirt. Later, the victim was able to identify the defendant two more times, once in a lineup at the police station and again at the preliminary hearing.

On the same night, only a few minutes later, Debra Hanna was

attacked by a man she identified as the defendant. She stated that as she was unlocking her residence door, the defendant approached her holding a gun. Ms. Hanna was able to get inside, lock the door, and call police. Within ten minutes, police arrived and reported that they had taken a man into custody only a few houses away, who fit her description of the attacker. When escorted by the police to where the defendant was held, Ms. Hanna identified the defendant as her assailant.

Officer J.D. Simon of the Memphis Police Department was in his patrol car searching the area near the Voyles residence when he received notice of the second attack. When apprehended, the defendant was carrying a butcher knife but had no gun.

At trial, the defendant denied any involvement in either attack. He claimed that he and a friend had been visiting with his cousin. He asserted that he had decided to visit his ex-girlfriend, walked over to her apartment, and, unable to locate her, was returning to his cousin's residence when stopped by police.

Antoine Thompson, a witness for the defense, claimed that he and the defendant were at a mutual friend's residence watching television until sometime between 10:30 and 11:30 p.m. Thompson recalled that when he went to bed, the defendant was still at the residence.

While the jury found the defendant guilty of the attempted especially aggravated kidnapping of Ms. Voyles, it acquitted the defendant of the charges relating to Ms. Hanna.

3

I

The defendant challenges the sufficiency of the evidence, insisting that there was no evidence that he intended to kidnap the victim, Ms. Voyles. He also argues that there was insufficient proof of his identity.

On appeal, of course, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which might be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as triers of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). When the sufficiency of the evidence is challenged, the relevant question is whether, after reviewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983); Tenn. R. App. P. 13(e).

A kidnapping occurs when one "knowingly removes or confines another unlawfully so as to interfere substantially with ... liberty ... [u]nder circumstances exposing the other to substantial risk of bodily injury...." Tenn. Code Ann. §§ 39-13-302, -303. It becomes especially aggravated when, among other things, it is "[a]ccomplished with a deadly weapon ..." Tenn. Code Ann. § 39-13-305. "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense [a]cts with intent to ... cause a result that would constitute the offense ... [and the action is] a substantial step toward the commission of the offense." Tenn. Code Ann. § 39-12-101(a)(3).

In our view, the proof clearly established that the defendant attempted

4

to commit the especially aggravated kidnapping of the victim. He pointed a gun to her head, told her to move from the driver's seat to the passenger's seat, and informed her that she would go with him. There was a violent struggle in the front seat as the victim attempted to escape her vehicle. When the victim got out of the car, the defendant continued to restrain her until he was startled by the arrival of the victim's son.

The defendant also argues that because the victim was uncertain of his identify until he put the hood on his head, the evidence is insufficient. "It is well-established that the identification of a defendant as the person who committed the offense for which he is on trial is a question of fact for the determination of the jury upon consideration of all competent proof. ... [T]he testimony of a victim, by itself, is sufficient to support a conviction." State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993) (citations omitted). Here, the victim's inability to initially recognize the defendant was well-established by the proof. The defense vigorously cross-examined the victim about the accuracy of her identification. The trial court correctly instructed the jury as to how to determine the reliability of the identification. See State v. Dyle, 899 S.W.2d 607 (Tenn. 1995). Under these circumstances, it was the prerogative of the jury to accredit the victim's identification.

## II

Because he was arrested on the day of the offense, April 5, 1994, and continuously incarcerated until the day of his trial, August 8, 1995, the defendant claims he was denied a speedy trial. The indictment was returned November 22, 1994. Several weeks later, the defendant filed a "Notice for Demand for Speedy Trial." Eighteen more days passed before the trial court entered an order scheduling the trial for May 23, 1995. At the conclusion of a hearing on the motion

5

for a speedy trial some two weeks earlier, the trial court determined that "[t]he case has been set as quickly as possible ....  I don't see how it can be done any quicker than that."  Thereafter, the defendant asked for continuances on three separate occasions before his trial on August 8, 1995.  The defendant complains that his sixteen-month period of pretrial incarceration was "prejudicial to [him] and to the judicial process."

The right to a speedy trial is founded in the constitution of Tennessee, art. I § 9.  This same right has been codified by Tenn. Code Ann. § 40-14-101 which provides:  "In all criminal prosecutions, the accused is entitled to a speedy trial ...."  Our rules of criminal procedure also require a prompt trial:  "If there is unnecessary delay ... in bringing a defendant to trial, the court may dismiss the indictment, presentment, information or complaint."  Tenn. R. Crim. P. 48(b).

In State v. Bishop, 493 S.W.2d 81 (Tenn. 1973), the Tennessee Supreme Court adopted a four-factor test for determining whether one has been denied his right to a speedy trial.  Adopting a test first established in Barker v. Wingo, 407 U.S. 514 (1972), our court identified the factors as

>    (1) the length of the delay;
>
>    (2) the reason for the delay;
>
>    (3) whether the defendant asserted his right to a speedy
>    trial; and
>
>    (4) the prejudice which accrued to the defendant as a
>    result of the delay.

Bishop, 493 S.W.2d at 84 (citing Barker, 407 U.S. at 530).  See State v. Wood, 924 S.W.2d 342, 346 (Tenn. 1996) (reaffirming the factors established in Barker).

In Barker, the United States Supreme Court held that "[t]he length of

6

the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530. "Serious charges are, however, expected to take longer than 'ordinary street crime[s].'" State v. Thomas, 818 S.W.2d 350, 362 (Tenn. Crim. App. 1991) (quoting Barker, 407 U.S. at 531) (alteration in original). Some courts have held "that a two-year delay is not inordinately long." Thomas, 818 S.W.2d at 363. Other courts, however, have found that a delay of one year or longer "marks the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry." Doggett v. United States, 505 U.S. 647, 652, n.1 (1992). Because there was a sixteen-month delay in this case, this court will consider the other factors.

The proof indicates that a major reason for the delay was a crowded trial docket. The defendant's requests for continuances also accounted for some of the delay. Our courts have held that a crowded docket is often a "legitimate reason" for delay. State v. Brooks, 880 S.W.2d 390, 394 (Tenn. Crim. App. 1993).

The defendant requested a speedy trial in January 1995, ten months into his period of pretrial incarceration. That favors the position of the defense.

Prejudice, the most important of the considerations, is assessed in the light of three interests to the defendant:

(1) to prevent oppressive pretrial incarceration;

(2) to minimize anxiety and concern of the accused; and

(3) to limit the possibility that the defense will be impaired.

Barker, 407 U.S. at 532. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the

7

entire system." Id.

That the defendant was incarcerated for sixteen months before there was a determination of his guilt is troublesome. In Barker, where the defendant was incarcerated for ten months before trial, the United States Supreme Court expressed concern about a lengthy pretrial incarceration:

> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. ... The time spent in jail is simply dead time. ... Imposing those consequences on anyone who has not yet been convicted is serious.

Id. at 532-33. Despite the expression of concern about pretrial incarceration, the Supreme Court did not deem ten months "sufficiently oppressive to call for a ruling in his favor." 2 Wayne Lafave, Criminal Procedure, § 18.2, 410 (1984) (commenting on the ruling in Barker). "Lower courts have reached the same conclusion as to substantially longer periods of imprisonment." Id. (citing United States v. Herman, 576 F.2d 1139, 1147 (5th Cir. 1978) (twenty-two-month period of incarceration did not, standing alone, constitute speedy trial denial)). See also State v. James H. Masters, No. 03C01-9503-CR-00092, slip op. at 6-7 (Tenn. Crim. App., at Knoxville, July 19, 1995) (acknowledging that the "proof, on its face, shows [the defendant] was exposed to unreasonably stressful conditions during his pretrial confinement that could have been avoided or substantially reduced by a speedy trial" but ruling the delay did not cause "sufficient prejudice to justify a dismissal.")

The most important factor in determining if the defendant had been prejudiced is whether his ability to present a defense has suffered. Barker, 407 U.S. at 532. The defendant has made no allegation that he could not adequately prepare a defense. There has been no showing that evidence has been lost, witnesses have disappeared, or memories faded. The defendant has offered no proof to show

8

he was actually prejudiced in the presentation of his defense. Without condoning the lengthy period of pretrial incarceration, we conclude the prejudice factor weighs favorably for the state.

In our view, a dismissal on grounds of the denial of a speedy trial is unwarranted in these circumstances.

### III

Next, the defendant claims that his sentence was excessive. Convicted of a Class B felony, the defendant received a Range II, twenty-year sentence, the maximum possible within the statutory range of twelve to twenty years. Tenn. Code Ann. § 40-35-112(b)(2). When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and

9

-210; <u>State v. Smith</u>, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

At the time of this offense, the presumptive sentence was the minimum in the range absent enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210. Should the trial court find mitigating and enhancement factors, it must start at the minimum sentence in the range and enhance the sentence based upon any applicable enhancement factors, then reduce the sentence based upon the appropriate mitigating factors. Tenn. Code Ann. § 40-35-210(e). The weight given to each factor is within the trial court's discretion provided that the record supports its findings and it complies with the Sentencing Act. <u>See</u> <u>Ashby</u>, 823 S.W.2d at 169. The trial court should, however, make specific findings on the record which indicate its application of the sentencing principles. Tenn. Code Ann. §§ 40-35-209 and -210.

In this instance, the trial court failed to make specific determinations on each of the enhancement factors:

> And it appears that since you have been an adult ... you have been arrested 24 times. I don't know about all the convictions. ... [T]his was what I find to be a violent crime. One woman was not convicted (sic); but as the State has stated, she certainly was a witness in this case. And it appeared from her testimony that she was attacked also. Two women attacked at night. On the first case ... there was a lengthy time of struggle--violent struggle with a gun put to a woman's head. If that woman had not been able to get away from you, I don't know where she would be ... None of us know what the outcome could have been. And the Court has a great concern about the violence of that and the possibility of what could have happened to that victim. The Court will sentence you to 20 years ... the maximum.

The court also entered a form styled "Written Findings of Fact"[1] which contains the following handwritten statement: "SENTENCE ... Due to several prior felonies, twenty-four (24) arrests and several convictions, violence involved, cruelty of the act, prior violation of probation, firearm used, risk of life." This suggests that the trial court applied the following statutory enhancement factors:

(1) previous history of criminal convictions ... in addition to those necessary to establish the appropriate range;

(2) the offense involved more than one victim;

(3) the defendant treated ... the victim with exceptional cruelty;

(4) the defendant has a history of unwillingness to comply with the conditions of a sentence involving release to the community;

(5) the defendant used a firearm;

(6) the defendant had no hesitation about committing a crime when the risk to human life is high; and

(7) the potential for bodily injury to a victim was great.

Tenn. Code Ann. § 40-35-114(1), (3), (5), (8), (9), (10), and (16).

The record establishes a history of criminal convictions beyond that necessary to establish the defendant as a Range II offender. The presentence report shows prior convictions for theft under $500; disorderly conduct (2 counts); assault (2 counts); driving on a suspended license (2 counts); DUI; selling cocaine; assault and battery; possession of cocaine; weapons offense; armed robbery; second degree murder; and third degree burglary. Thus, the number and degree of his prior criminal history was entitled to significant weight in the determination of the sentence.

---

[1]The form contains contradictory information. For example, the court marked on the form that the defendant is a standard offender, a persistent offender, a career offender, and an especially mitigated offender. The court also marked affirmatively that it was considering every single statutory mitigating circumstance and that the defendant was eligible for probation because his sentence was eight years or less.

11

The trial judge indicated that he relied on the fact that the defendant had twenty-four arrests. In reviewing the presentence report, however, we have concluded that seven of those charges resulted in dismissals. Section 40-35-207(a)(4), Tenn. Code Ann., which sets forth the contents to be included in a presentence report, provides that the report should contain the "defendant's record of prior convictions." In State v. Marshall, 870 S.W.2d 532, 542 (Tenn. Crim. App. 1993), this court held as follows:

> An arrest or charge is not considered evidence of the commission of a crime. See State v. Miller, 674 S.W.2d 279, 284 (Tenn. 1984). A trial court should not use evidence merely showing arrests, without more, to enhance a sentence. State v. Newsome, 798 S.W.2d 542, 543 (Tenn. Crim. App. 1990).

While this enhancement factor is still sufficiently established without relying on the arrests, the trial court should not have relied on the mere arrests to enhance the sentence. See also State v. Ben Ingram, No. 01C01-9509-CC-00297 (Tenn. Crim. App., at Nashville, Oct. 29, 1996); Tenn. Code Ann. § 40-35-114(1).

The record also suggests the trial court enhanced the sentence because the offense involved more than one victim. In State v. Lambert, 741 S.W.2d 127, 134 (Tenn. Crim. App. 1987), this court held that where a defendant receives a separate sentence for each victim, use of the more than one victim factor is inappropriate. The ruling in Lambert has been extended to bar use of this factor when the jury acquits the defendant of the charges against the additional victims. State v. John L. Smith, No. 01C01-9309-CR-00308, slip op. at 10 (Tenn. Crim. App., at Nashville, Oct. 20, 1994); State v. Greg Patterson, No. 03C01-9106-CR-180, slip op. at 9 (Tenn. Crim. App., at Knoxville, May 19, 1992). Thus, this enhancement factor was inappropriately applied. Tenn. Code Ann. § 40-35-114(3).

The trial court also enhanced the sentence because the defendant

12

treated the victim with exceptional cruelty. Application of this factor requires a showing of "exceptional cruelty." State v. Williams, 920 S.W.2d 247, 250 (Tenn. Crim. App. 1995). "Exceptional cruelty is usually found in cases of abuse or torture." Id. Our supreme court recently discussed application of this factor and ruled that the trial court had a duty to state on the record the circumstances qualifying as "exceptional cruelty." State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997) (citing State v. Goodwin, 909 S.W.2d 35, 45 (Tenn. Crim. App. 1995)). Before the factor may be applied, the facts in the case must "support a finding of 'exceptional cruelty' that 'demonstrates a culpability distinct from and appreciably greater than that incident to'" the crime. Poole, 945 S.W.2d at 98 (quoting State v. Jones, 883 S.W.2d 597, 601 (Tenn. 1994)). In Poole, the supreme court found this factor applicable in an especially aggravated robbery case where the defendant hit an elderly woman over the head with a baseball bat and left her alone while bleeding and unconscious. In State v. Carter, 908 S.W.2d 410, 413 (Tenn. Crim. App. 1995), our court found this factor applicable in especially aggravated kidnapping and aggravated robbery case, where the victim had been raped and left "naked in freezing weather." In State v. Kern, 909 S.W.2d 5, 7 (Tenn. Crim. App. 1993), an especially aggravated kidnapping and especially aggravated robbery case, this court found the exceptional cruelty enhancement factor applicable where the defendant "made repeated sexual comments and threats to the victim and ordered her to remove her clothing at knife point."

Here, the defendant accosted the victim, struggled with her for several minutes, threatened her with a gun, and pushed her to the ground before leaving her. While egregious, these facts do not establish a culpability appreciably greater than what is required to sustain a conviction for attempted especially aggravated kidnapping. Thus, the trial court should not have applied this factor. Tenn. Code

13

Ann. § 40-35-114(5).

The trial court also considered that the defendant has a history of unwillingness to comply with the conditions of a sentence involving release to the community. The presentence report indicates probation violations; thus, there is adequate proof to support application of this enhancement factor. Tenn. Code Ann. § 40-35-114(8).

The next three enhancement factors used by the trial judge are that the defendant used a firearm, that the defendant had no hesitation about committing a crime when the risk to human life is high, and that the potential for bodily injury to a victim was great. Tenn. Code Ann. § 40-35-114(9), (10), and (16). The trial court may only consider enhancement factors that are "not themselves essential elements of the offense as charged in the indictment." Tenn. Code Ann. § 40-35-114. In Poole, our supreme court explained this rule:

> Facts which establish the elements of the offense charged may not also be the basis of an enhancement factor increasing punishment. The legislature, in determining the ranges of punishment within the classifications of offenses, necessarily took into account the culpability inherent in each offense.

Poole, 945 S.W.2d at 95-96 (quoting Jones, 883 S.W.2d at 601).

The indictment charging the defendant with attempted especially aggravated kidnapping alleged the defendant attempted to "interfere with the liberty of [the victim] by use of a deadly weapon ...." Because the use of a deadly weapon is an element of the charged offense, it cannot be used to enhance the sentence. Tenn. Code Ann. § 40-35-114(9).

Kidnapping is defined as a false imprisonment "[u]nder circumstances

14

exposing the other person to substantial risk of bodily injury." Tenn. Code Ann. § 39-13-303 (a)(1). Thus, the trial court also erred by applying the enhancement factor that the defendant had no hesitation about committing a crime when the risk to human life was high. See Jones, 883 S.W.2d at 603. In Jones, our supreme court held that "[t]he determinative language of this factor is 'the risk to human life was high.'" Id. at 602. To justify use of this factor, the state must prove the defendant "demonstrated a culpability distinct from and appreciably greater than that incident to the offense for which he was convicted." Id. at 603. Here, the state failed to prove that the defendant demonstrated an "appreciably greater" type of culpability. Thus, application of the factor was erroneous. The same reasoning would bar application of the final factor, that the potential for bodily injury to a victim was great. See State v. Kern, 909 S.W.2d 5, 7 (Tenn. Crim. App. 1993) (ruling enhancement factors Tenn. Code Ann. § 40-35-114(10) and (16) were erroneously used to enhance a sentence for especially aggravated kidnapping).

The trial court erred in its use of five of the seven mentioned enhancement factors. "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The state concedes the trial court may have erroneously relied on certain enhancement factors but urges this court, in its de novo review, to apply the enhancement factor that the "felony ... involved the threat of death or bodily injury ... and the defendant has previously been convicted of a felony that resulted in death or bodily injury." Tenn. Code Ann. § 40-35-114(11). The record does demonstrate that the defendant was previously convicted of second degree murder. This additional factor warrants considerable weight.

15

While the trial court misapplied a number of enhancement factors, those applicable are entitled to much weight. The gravity and number of the defendant's prior felonies, his unwillingness to comply with conditions of release into the community, his previous second degree murder conviction, and his uncurbed propensity towards violence warrant the maximum sentence possible.

Accordingly, the judgment of the trial court is affirmed.

_____
Gary R. Wade, Judge

CONCUR:


_____
Joe B. Jones, Presiding Judge


_____
Curwood Witt, Judge