IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 4, 2003

## STATE OF TENNESSEE v. MARIO ANTOINE LEGGS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-A-273     Steve Dozier, Judge**

_____

**No. M2002-01022-CCA-R3-CD - Filed May 21, 2003**

_____

The Defendant, Mario Antoine Leggs, was convicted by a jury of theft, robbery, two counts of reckless endangerment, aggravated robbery, two counts of evading arrest, three counts of reckless aggravated assault, leaving the scene of an accident, and driving on a suspended license. After a sentencing hearing, the trial court ordered the Defendant to serve an effective sentence of twenty-three years, eleven months, and twenty-eight days in the Department of Correction. In this direct appeal, the Defendant raises the following issues: (1) whether the trial court erred by denying the Defendant's motion to sever the offenses; (2) whether the trial court erred by admitting prior identification testimony; (3) whether the Defendant is entitled to a new trial based upon improper remarks made by the prosecutor during closing argument; (4) whether the trial court erred by not reducing the Defendant's three convictions for reckless aggravated assault to simple assault; (5) whether the trial court erred by not merging one of the Defendant's convictions for evading arrest with his conviction for leaving the scene of an accident; and (6) whether the trial court properly sentenced the Defendant. We hold that the trial court erred by not severing the offenses that occurred on November 16, 2000. However, we deem the error harmless. Because we find insufficient evidence to support the Defendant's second conviction for evading arrest, we reverse it and dismiss that charge. In all other respects, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part;**
**Reversed in Part; Modified**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Michael Colavecchio, Nashville, Tennessee, for the appellant, Mario Antoine Leggs.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Derrick Scretchen, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

The facts surrounding the Defendant's conviction for theft begin on October 25, 2000, in the Proffitt's department store parking lot at Rivergate Mall. Michelle Williams got off work at about 5:45 that evening. As she was walking to her vehicle in the parking lot, a man pulled up beside her in a car, grabbed her purse, "ripped it off" her shoulder, and "took off." Ms. Williams testified that she got a "quick glance" at the left side of her assailant's face. She described him as a black man, and he was driving a small brown car. At trial, Ms. Williams identified the Defendant as the man who stole her purse.

The Defendant's conviction for robbery and one of his convictions for reckless endangerment stem from a similar occurrence on November 3, 2000, at about 6:00 p.m. Alexandra Sparrow had parked in the Proffitt's parking lot at Rivergate Mall and was going into the mall to pay a credit card bill. As she walked across the parking lot, she "felt somebody jerking [her] purse from behind." She turned around and saw that the man who had grabbed her purse was driving a car, and "he wasn't gonna stop." Ms. Sparrow tried to let go of her purse, but somehow the purse "got wrapped in [her] hand." The driver of the car dragged Ms. Sparrow alongside his car. Ms. Sparrow testified that she was able to see the driver's face in the car's mirror. Ms. Sparrow's right leg came into contact with one of the vehicle's tires, and she "thought [she] was gonna die." However, the purse straps eventually came out of Ms. Sparrow's hand, and she fell to the ground. Ms. Sparrow stated that the man who took her purse was driving a "chocolate brown Camry."

Also in the Proffitt's parking lot at the time of the attack on Ms. Sparrow was Michael Powell, a driver for UPS who was making a delivery to Rivergate Mall. Mr. Powell witnessed Ms. Sparrow being dragged beside a car and saw her fall onto the pavement. Mr. Powell told his supervisor to remain with Ms. Sparrow; he then got into his UPS truck and followed the escaping automobile. Mr. Powell was able to observe that the person who had taken Ms. Sparrow's purse was driving a brown Toyota Camry with license plate number EMR 757. Detective Harold Willis of the Goodlettsville Police Department interviewed Mr. Powell and researched the vehicle's license plate number. Two people were identified as owners of the car, one of whom was the Defendant.

That same evening, Detective Willis arranged for both Ms. Sparrow and Ms. Williams to view a photo lineup containing pictures of six men. Ms. Sparrow viewed the lineup at a police substation in Rivergate Mall. She eliminated five of the men in the lineup with one-hundred-percent certainty. She stated that she was fifty percent sure that the remaining man in the lineup, the Defendant, was the man who had taken her purse. Both Detective Willis and Ms. Sparrow testified that, as she viewed the lineup, the Defendant's eyes were the feature that stood out most to her. Detective Willis showed the lineup to Ms. Williams at the store in Rivergate Mall in which she worked. He testified that she also ruled out five of the men in the lineup, and she was fifty percent sure that it was the Defendant who grabbed her purse and drove away. Ms. Williams also commented on the Defendant's eyes. She testified that his eyes "were cold, mean-looking."

The Defendant's remaining convictions arise from a series of events that occurred on November 16, 2000. Between 1:00 and 2:00 in the afternoon, Julia Peach was walking from Rivergate Mall to her car, which was parked in the Proffitt's parking lot. As she was putting items into her car, a man approached her. The man was holding a knife by his side, and he said, "I'm not gonna hurt you." The man then reached into Ms. Peach's car and took her purse. At this point, Ms. Peach ran back to the mall screaming. Ms. Peach testified that, aside from her wallet, credit cards, checkbook, and cash, she also had an antique Coca-Cola pocketknife in her purse.

Detective Ronald Bright of the Goodlettsville Police Department testified that, based upon the license plate information that had been obtained as a result of the second robbery, the Defendant was a suspect in both robberies. On November 16, 2000, a call was issued that another robbery had occurred in the parking lot at Rivergate Mall. Detective Bright began driving to the Defendant's known residence and looking for the brown Toyota Camry. Detective Bright was sitting at a red light when he noticed the Defendant's vehicle, a brown Toyota Camry with license plate number EMR 757, directly in front of him. Detective Bright activated his emergency lights and siren, and the Defendant fled. During the ensuing chase, which covered approximately five miles, the Defendant and Detective Bright drove their vehicles in excess of ninety miles-per-hour. As he was following the Defendant, Detective Bright observed the Defendant throw a purse out of his car. The purse was later determined to belong to Ms. Peach.

As the Defendant sped down a two-lane road, Detective Bright saw a school bus turning off a side street in front of the Defendant, and the Defendant's vehicle struck the bus. Detective Bright testified that the Defendant's vehicle "ricocheted off the bus…went down into a small ditch, came up, went airborne, hit a tree, did about four or five turns, and landed on the ground." Three children who were on the bus at the time of the crash testified that they suffered minor injuries as a result of the impact. Detective Bright approached the Defendant's car, but the Defendant was not inside. Detective Bright discovered that the Defendant had run into some nearby woods. Eventually the Defendant was found in the woods and was arrested. After he was released from the hospital the next day, the Defendant was taken to the police station. Detective Bright testified that, after being advised of his Miranda rights, the Defendant described the manner in which each of the three incidents occurred. He denied ever hurting any of his victims, and he specifically denied wielding a knife during his robbery of Ms. Peach. However, two knives were found in the Defendant's vehicle. One was the Coca-Cola knife that had been in Ms. Peach's purse. Ms. Peach identified the second knife as the one the Defendant had in his hand when he approached her in the mall parking lot.

The jury convicted the Defendant of the aggravated robbery of Ms. Peach, evading arrest by fleeing from Detective Bright, three counts of reckless aggravated assault based upon the injuries

to the children on the bus, reckless endangerment, leaving the scene of an accident, driving on a suspended license,[1] and evading arrest by fleeing from another officer.

The Defendant argues that the trial court erred by denying his motion to sever the offenses. Prior to trial, the Defendant moved to sever these offenses into three separate trials based on the three different dates on which the various offenses were committed. He contends that because there was no proof of the similarity of the crimes, a larger plan or conspiracy, or a common criminal transaction, the offenses should have been tried separately. The proper standard of review for decisions concerning permissive joinder and severance of offenses is abuse of discretion. See State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999). Therefore, a trial court's decision to consolidate or sever offenses will not be disturbed on appeal unless the "'court applied an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to the party complaining.'" Id. (quoting State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997)).

According to Rule 8(b) of the Tennessee Rules of Criminal Procedure, in order to consolidate separate indictments, the State must show that the offenses are part of a common scheme or plan or that the offenses are "of the same or similar character." "In contrast, however, a defendant has a right under Rule 14(b)(1) to a severance of offenses permissively joined, unless the offenses are part of a common scheme or plan and the evidence of one offense 'would be admissible upon the trial of the others.'" Spicer v. State, 12 S.W.3d 438, 443 (Tenn. 2000). "Consequently, when a defendant objects to a pre-trial consolidation motion by the state, the trial court must consider the motion by the severance provisions of Rule 14(b)(1), not the 'same or similar character' standard of Rule 8(b)." Id. Our supreme court has stated that "[t]he primary inquiry into whether a severance should have been granted under Rule 14 is whether the evidence of one crime would be admissible in the trial of the other if the two counts of the indictment had been severed." State v. Burchfield, 664 S.W.2d 284, 286 (Tenn. 1984). "In its most basic sense, therefore, any question as to whether offenses should be tried separately pursuant to Rule 14(b)(1) is 'really a question of evidentiary relevance.'" Spicer, 12 S.W.3d at 445 (citations omitted).

Our supreme court further stated:
> Before consolidation is proper, the trial court must conclude from the evidence and arguments presented at the hearing that: (1) the multiple offenses constitute parts of a common scheme or plan, Tenn. R. Crim. P. 14(b)(1); (2) evidence of each offense is relevant to some material issue in the trial of all the other offenses, Tenn. R. Evid. 404(b)(2); State v. Moore, 6 S.W.3d 235, 239 (Tenn. 1999); and (3) the probative value of the evidence of other offenses is not outweighed by the prejudicial effect that admission of the evidence would have on the defendant, Tenn. R. Evid. 404(b)(3).

---

[1] Kenneth Birdwell, a custodian of driving records for the Department of Safety, testified that, on November 16, 2000, the Defendant was driving on a suspended license.

Spicer, 12 S.W.3d at 445. The first prong of Rule 14(b)(1) of the Tennessee Rules of Criminal Procedure requires that the trial court find a common scheme or plan. "In Tennessee, there are three types of common scheme or plan evidence: (1) offenses that reveal a distinctive design or are so similar as to constitute 'signature' crimes; (2) offenses that are part of a larger, continuing plan or conspiracy; and (3) offenses that are all part of the same criminal transaction." Shirley, 6 S.W.3d at 248.

Our supreme court has noted that "a common scheme or plan for severance purposes is the same as a common scheme or plan for evidentiary purposes." State v. Moore, 6 S.W.3d 235, 240 n.7 (Tenn. 1999). Thus, Tennessee Rule of Evidence 404(b) is relevant to our analysis of this issue. Tennessee Rule of Evidence 404(b) prohibits the admission of "other crimes, wrongs, or acts" of the defendant when admitted only to show the defendant's propensity to commit the crime charged. However, Rule 404(b) does not bar admission of acts alleged to be part of a common scheme or plan when relevant to a material issue at trial and the probative value of such evidence is not outweighed by its prejudicial effect on the defendant. See Bunch v. State, 605 S.W.2d 227, 229 (Tenn. 1980).

The second prong of Rule 14(b)(1) of the Tennessee Rules of Criminal Procedure requires that the evidence of each of the offenses be admissible at the trial of the other. Under Tennessee Rule of Evidence 404(b) and Spicer, 12 S.W.3d at 445, for evidence of other crimes to be admissible in a criminal trial, the evidence must be relevant to a material issue and the probative value of the evidence must not be outweighed by the risk of unfair prejudice to the defendant. Therefore, once the trial court determines that a common scheme or plan exists, it then must decide whether evidence of the plan is relevant to a material issue and balance the probative value of the evidence against the risk of unfair prejudice to the defendant. See Spicer, 12 S.W.3d at 445.

In its order denying the Defendant's motion to sever, the trial court stated:

> In this case, Det. Bright testified that all three victims identified the perpetrator as a black male who was driving an older model brown vehicle. According to Det. Bright, the first two robberies involved a perpetrator pulling along side of the victim and taking their purse before fleeing the scene in his vehicle. Det. Bright also testified that all of the robberies occurred at the exact same location. Det. Bright further testified that the first robbery occurred at approximately 5:55 P.M., the second robbery occurred at approximately 6:04 P.M., and the last robbery occurred at approximately 2:04 P.M. The Court would acknowledge that the last alleged robbery was accomplished with the perpetrator attacking the victim with a weapon while standing as opposed to sitting in his vehicle. Additionally, the Court would acknowledge that the time frame is minimally different.

> However, Det. Bright testified that the third victim, Ms. Peach advised him that the perpetrator then fled the scene in an older model brown vehicle, which was consistent with the first two robberies. Therefore, the Court opines that the identity

of the perpetrator is a material issue in this case, evidence of each of the crimes in this case "would be admissible upon the trial of the others,"…to establish identity.

While the trial court found that the Defendant's criminal behavior on the three dates in question did constitute a common scheme or plan, it failed to specifically indicate which of the three types of common scheme or plan evidence was implicated in this case. Obviously, these offenses were not all part of the same criminal transaction, and the three episodes were not so similar as to constitute "signature" crimes, especially where, during the third episode, the Defendant was on foot, not in a car, and displayed a knife. Therefore, it is reasonable to assume that the trial court found that the three episodes constituted a "larger, continuing plan." Shirley, 6 S.W.3d at 248. As the trial court noted, the first two offenses were nearly identical in that they occurred at the same time of day, in the same place, and in each case, a black man grabbed a woman's purse as he drove by in his older, small, brown car. The third offense was different in that it occurred at an earlier time of day, the perpetrator was not driving a car when he took the woman's purse, and he displayed a knife during the commission of the crime. However, it occurred in exactly the same place as the prior crimes, it involved a woman having her purse taken, and the perpetrator fled in an older, small, brown car. Furthermore, all of the crimes occurred between October 25 and November 16, 2000. We think that these factors sufficiently demonstrate that the offenses were part of a larger, continuing plan to steal women's purses in the Proffitt's parking lot at Rivergate Mall.

The trial court also found that the evidence of each offense was relevant to a material issue in the trial of the other offenses, specifically identity. "Typically, offenses that are parts of a common scheme or plan are offered by the State to establish the identity of a perpetrator." Moore, 6 S.W.3d at 239. We agree that the identity of the perpetrator was a material issue in this case. When the victims of the first two episodes viewed a photographic lineup, each was able to identify the Defendant with only fifty-percent certainty. Although each victim identified the Defendant at trial, counsel for the Defendant vigorously cross-examined the victims regarding their respective opportunities to view the Defendant and their inability to pick the Defendant out of the photo lineup with any more than fifty-percent certainty. Therefore, the evidence of the other criminal episodes was relevant to the material issue of identity in accordance with Tennessee Rule of Evidence 404(b)(2).

However, for evidence of one offense to be admissible in the trial of another, the evidence must not only be relevant to a material issue, its probative value also must outweigh the risk of unfair prejudice to the defendant. See Tenn. R. Evid. 404(b)(3). In this case, the trial court failed to expressly state that it conducted a Rule 404(b)(3) balancing test. As we have already noted, the episodes that occurred on October 25 and November 3 are nearly identical. Therefore, the probative value of the evidence of each of these instances is high, and it outweighs the risk of prejudice caused by the jury hearing evidence of two separate criminal incidents. However, with respect to the episode that occurred on November 16, several distinguishable factors were present which increase the risk of unfair prejudice to the Defendant and decrease the probative value of the evidence of that crime spree. First, unlike the prior two instances, the Defendant did not drive by the victim in his car and grab her purse strap. Instead, he approached the victim on foot. Second, while the first two

crimes were committed at almost exactly the same time of day, the third took place approximately four to five hours earlier in the day. Third, and most importantly, on November 16, the assailant displayed a knife, whereas no weapon was used during the commission of the first two criminal episodes. The presence of a deadly weapon is highly prejudicial evidence in the trial of the first two occurrences, in which no weapon was displayed. Based on the dissimilarities of the third criminal episode, we conclude that the probative value of that evidence was outweighed by the risk of unfair prejudice to the Defendant. Therefore, the trial court erred by finding that the evidence of the November 16 episode would be admissible in the trial of the other two, and it abused its discretion by denying the Defendant's motion to sever the offenses that occurred on November 16 from those that occurred on the two prior dates.

Having determined that the trial court abused its discretion in consolidating the crimes committed on November 16 with the other two episodes, we must now decide whether that abuse of discretion affirmatively appears to have affected the outcome of the trial. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). In most severance cases, "the line between harmless and prejudicial error is in direct proportion to the degree…by which proof exceeds the standard required to convict, beyond a reasonable doubt." Delk v. State, 590 S.W.2d 435, 442 (Tenn. 1979); see also Spicer, 12 S.W.3d at 447; Shirley, 6 S.W.3d at 250; Moore, 6 S.W.3d at 242. In this case, the evidence regarding the October 25 crime consisted of the victim's testimony. She described how her purse was stolen and identified the Defendant as the man who took it. In addition, this proof was reinforced by the evidence of the offense committed on November 3, which was strong evidence relative to the identity of the Defendant as the assailant. This evidence is more than sufficient for conviction beyond a reasonable doubt, and we cannot say that the improper consolidation affirmatively appears to have affected the trial with respect to the October 25 episode. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).

With respect to the crimes that were committed on November 3, the proof consisted of the victim's testimony, in which she described the manner in which her purse was grabbed and how she was dragged by the car. The victim identified the Defendant as her assailant at trial. The State also offered the testimony of the UPS driver who followed the Defendant's vehicle and recovered its license plate number and the police officer who discovered that the Defendant was one of the two listed owners of the vehicle with that license tag. Again, this evidence is bolstered by the identity evidence presented in relation to the October 25 offense. This is more than sufficient evidence for conviction beyond a reasonable doubt, and we cannot say that more probably than not the judgment was affected by the trial court's error. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b).

Finally, the proof regarding the series of crimes committed on November 16 consisted of the victim's testimony, the testimony of the police officer who pursued the Defendant in his patrol car and was present for the Defendant's capture and arrest, and the testimony of people who were on the school bus into which the Defendant's vehicle crashed. There was quite clearly sufficient proof of

all but one of the crimes that were committed by the Defendant on November 16, 2000,[2] and it does not affirmatively appear that evidence of the first two episodes affected the outcome with respect to the November 16 offenses. See Tenn. R. Crim. P. 52(a); Tenn. R. App. P. 36(b). We are unable to say that the trial court's failure to grant the Defendant's motion to sever the November 16 offenses affirmatively appears to have affected the outcome of the trial; therefore, the trial court's error in this regard is harmless, and this issue is without merit.

Next, the Defendant contends that the trial court erred by admitting prior identification testimony. However, the Defendant failed to raise this issue in his motion for a new trial, which results in a waiver of the issue. See Tenn. R. App. P. 3(e). Furthermore, the Defendant failed to argue the issue in his brief; he merely stated it as an issue presented for appeal. According to Tennessee Court of Criminal Appeals Rule 10(b), "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." It appears that, by failing to argue the issue of the prior identification testimony in his brief, the Defendant has abandoned the issue. In any event, the issue has been waived.

The Defendant also argues that he is entitled to a new trial based upon improper remarks made by the prosecutor during closing argument. During the State's closing argument to the jury, the prosecuting attorney stated, "I don't have to bring to your attention that, on September eleventh, an airplane, which is normally something used just to transport people, was turned into a deadly weapon; and it was turned into a deadly weapon by the manner in which it was used." The Defendant argues in his brief that the prosecutor's comments, which were made only one month after the terrorist attacks in New York City on September 11, 2001, "were made with the intent to inflame the jury and promote the hatred felt by many Americans for terrorists immediately thereafter." The Defendant contends that the remarks warrant reversal because the trial court failed to address the issue and the prosecutor never retracted the comments. However, the Defendant failed to take available action to prevent or nullify the alleged harmful effect of this argument as he did not make a contemporaneous objection at trial. He is, therefore, not entitled to relief. See Tenn. R. App. P. 36(a); State v. Thomas, 818 S.W.2d 350, 365 (Tenn. Crim. App. 1991) (holding that "[t]he failure to make a contemporaneous objection serves as a waiver"). Even if the issue was not waived, the prosecutor's comments were not improper. The prosecutor was using the attack on the World Trade Center as an example of an ordinary means of transportation being used as a deadly weapon to illustrate how the Defendant's car could similarly constitute a deadly weapon based on how it was used. He did not compare the Defendant to the terrorists of September eleventh or indicate that the Defendant was as culpable as they. Moreover, even if the argument of the prosecutor did constitute misconduct, whether it amounts to reversible error depends on whether it had a prejudicial effect upon the jury's verdict. See State v. Thornton, 10 S.W.3d 229, 235 (Tenn. Crim. App. 1999). The Defendant has not demonstrated that the argument of the prosecutor, given the strength of the State's case, affected the jury's verdict to his prejudice. This issue is without merit.

---

[2] We found no evidence in the record to support the Defendant's second conviction for evading arrest. However, as that issue is unrelated to the issue of severance, we address it later in the opinion.

The Defendant also asserts that the trial court erred by not reducing the Defendant's three convictions for reckless aggravated assault to simple assault.[3] Essentially, this presents the question of whether the evidence is sufficient to sustain the Defendant's three convictions for reckless aggravated assault. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." Evidence is sufficient if, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Smith, 24 S.W.3d 274, 278 (Tenn. 2000). In addition, because conviction by a trier of fact destroys the presumption of innocence and imposes a presumption of guilt, a convicted criminal defendant bears the burden of showing that the evidence was insufficient. See McBee v. State, 372 S.W.2d 173, 176 (Tenn. 1963); see also State v. Buggs, 995 S.W.2d 102, 105-06 (Tenn. 1999); State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

In its review of the evidence, an appellate court must afford the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Tuggle, 639 S.W.2d at 914; see also Smith, 24 S.W.3d at 279. The court may not "re-weigh or re-evaluate the evidence" in the record below. Evans, 838 S.W.2d at 191; see also Buggs, 995 S.W.2d at 105. Likewise, should the reviewing court find particular conflicts in the trial testimony, the court must resolve them in favor of the jury verdict or trial court judgment. See Tuggle, 639 S.W.2d at 914. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. See State v. Morris, 24 S.W.3d 788, 795 (Tenn. 2000); State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

A person commits reckless aggravated assault who recklessly commits an assault and either causes serious bodily injury to another or uses or displays a deadly weapon. See Tenn. Code Ann. § 39-13-102(a)(2). Assault is defined in pertinent part as intentionally, knowingly, or recklessly causing bodily injury to another. See id. § 39-13-101(a)(1). First, the Defendant argues that the injuries suffered by the three children on the bus do not constitute serious injury. However, the indictment does not allege that the children were seriously injured as a result of the accident. With respect to the three counts in the indictment charging the Defendant with reckless aggravated assault, the indictment states that the Defendant "recklessly did cause bodily injury to [the victims] by the use or display of a deadly weapon, to wit: a speeding automobile . . . ." Accordingly, the Defendant further argues in his brief that he did not use or display a deadly weapon, as his vehicle was traveling slowly when it struck the school bus. In support of this theory, he contends in his brief that he must have been traveling slowly, for only three children were injured, and they only reported "minor headaches." We find this argument unpersuasive.

---

[3]We note that the Defendant cites no authority for his proposition that the trial court should have reduced the Defendant's convictions for reckless aggravated assault to simple assault.

First of all, this Court has held that a motor vehicle can constitute a deadly weapon within the meaning of Tennessee Code Annotated section 39-13-102. See State v. Tate, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995). Detective Bright testified that he chased the Defendant for approximately five miles, and at times the chase reached speeds in excess of ninety miles-per-hour. Detective Bright further testified that, when the Defendant's car crashed into the school bus, it "ricocheted off the bus…went down into a small ditch, came up, went airborne, hit a tree, did about four or five turns, and landed on the ground." This evidence is sufficient to support the finding that the Defendant did cause bodily injury to the three victims by the use of a deadly weapon, specifically, his speeding automobile. This issue is without merit.

Next, the Defendant argues that the trial court erred by not merging one of the Defendant's convictions for evading arrest with his conviction for leaving the scene of an accident. He contends that count ten of the indictment, which charges the Defendant with leaving the scene of the accident with the school bus, should be merged with count twelve, which is the second charge of evading arrest. Count twelve alleges that, on November 16, 2000, the Defendant "intentionally did flee from Officer William Dillon," whom the Defendant knew was a law enforcement officer that "was attempting to arrest him." Officer Dillon did not testify, and no witness testified to the conduct alleged in count twelve of the indictment. In his brief, the Defendant states that the two offenses "are one and the same conduct in this case." However, in our review of the record, we have been unable to find any evidence which would sustain the Defendant's conviction for evading arrest in count twelve. Although the Defendant does not challenge the sufficiency of the evidence with respect to this conviction for evading arrest, this Court has discretion pursuant to Rule 52(b) of the Tennessee Rules of Criminal Procedure to take notice at any time of plain error which affects a substantial right of the accused where it may be necessary to do substantial justice. See State v. Taylor, 992 S.W.2d 941, 944 (Tenn. 1999); State v. Ogle, 666 S.W.2d 58, 60 (Tenn. 1984). When deciding whether an error constitutes "plain error," we consider five factors:

> (a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000) (quoting State v. Adkisson, 899 S.W.2d 626, 641 (Tenn. Crim. App. 1994)). With respect to the first factor, the record is void of any evidence that the Defendant fled from an Officer Dillon as alleged in count twelve of the indictment. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt;" thus, the second and third factors are satisfied. There appears to be no tactical reason for the Defendant to have waived the issue of insufficient evidence to support his second conviction for evading arrest; therefore the fourth factor is satisfied. And finally, if there is no proof in the record that the Defendant committed the act alleged in count twelve of the indictment, for which he was convicted, it is necessary that we

consider the issue to ensure justice. Therefore, we find that allowing the conviction to be entered in the absence of evidence in the record regarding the Defendant's second conviction for evading arrest was plain error. As such, the failure of the Defendant to raise the issue on appeal does not preclude this Court from considering the issue. See Tenn. R. Crim. P. 52(b).

In our review of the record, we have found no evidence that the Defendant evaded arrest as alleged in count twelve of the indictment. Therefore, that conviction must be reversed and the charge dismissed in accordance with Rule 13(e) of the Tennessee Rules of Appellate Procedure.

The Defendant's final issue is whether he was properly sentenced by the trial court. The Defendant does not challenge the length of the individual sentences. He challenges only the imposition of partially consecutive sentences. When an accused challenges the length, range, or manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement made by the defendant regarding sentencing; and (g) the potential or lack of potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Brewer, 875 S.W.2d 298, 302 (Tenn. Crim. App. 1993); State v. Thomas, 755 S.W.2d 838, 844 (Tenn. Crim. App. 1988).

If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904, 926-27 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The trial court imposed partial consecutive sentences on the dual bases that the Defendant is "an offender whose record of criminal activity is extensive" and was "sentenced for an offense committed while on probation." Tenn. Code Ann. § 40-35-115(b)(2), (6). The Defendant argues that the trial court erred by sentencing him as a dangerous offender. However, the record reflects that the trial court did not sentence the Defendant as a dangerous offender. Instead, the trial judge ordered the Defendant to serve consecutive sentences based upon his extensive criminal history and

-11-

the fact that he was on probation when he committed the instant offenses. Indeed, in its order denying the Defendant's motion for a new trial, the trial court stated, "Further, the Court would note that the defendant was not classified or found to be a 'dangerous offender' for sentencing purposes as counsel argues in his motion. Rather, the Court used the [factors set forth in Tennessee Code Annotated section 40-35-115(2), (6)] in determining the appropriate sentence for the defendant." Therefore, the Defendant's challenge to the trial court's classification of him as a dangerous offender is misplaced and without merit.

The Defendant also argues that the trial court erred by imposing consecutive sentences where it had denied a severance of offenses. In his brief, the Defendant states,

> [T]he trial court adopted the State's theory that these crimes were all part of the same transaction, just separated by several days time. However, when the time came to be consistent, as in sentencing, the trial court declared that the separate incidents were to be punished separately, and sentenced the Appellant to consecutive sentences on the separate theft/robberies, and separate from the incident in which the Appellant's vehicle hit the school bus, and yet again separate from the Appellant's subsequent flight from the school bus accident. We submit that if these events were indeed part of a common plan or scheme, then they should be punished likewise, and that therefore the Appellant should receive concurrent sentences.

The Defendant has cited no authority, and we are aware of none, which would support the proposition that a trial court's decision to sever offenses is in any way related to the imposition of consecutive sentences. As we have stated, a trial court's decision to grant or deny a motion for a severance is governed by the Tennessee Rule of Criminal Procedure 14(b)(1), which contains the "common scheme or plan" language. However, the factors to be considered when imposing consecutive sentences are set forth in Tennessee Code Annotated section 40-35-115(b). These factors are independent from the mandates of Rule 14(b)(1). Therefore, the Defendant's contention that he should receive concurrent sentences because the trial court denied his motion for a severance of offenses is without merit.

However, we have determined that the Defendant's conviction for evading arrest as alleged in count twelve of the indictment must be reversed and dismissed because there was no evidence in the record to support it. The trial court imposed a sentence of eleven months and twenty-nine days for this conviction, and it ordered this sentence to be served consecutively to the sentences for counts one, two, four, and six, resulting in an effective sentence of twenty-three years, eleven months, and twenty-eight days. Because the conviction for evading arrest in count twelve is reversed and dismissed, we modify the Defendant's effective sentence to twenty-two years, eleven months, and twenty-nine days.

In all other respects, the judgment of the trial court is affirmed.

_____

DAVID H. WELLES, JUDGE