STATE of Tennessee, Appellee,

v.

Jackie CANNON and Kenneth
Hatchett, Appellants.

Court of Criminal Appeals of Tennessee,
at Nashville.

March 3, 1982.

Permission to Appeal Denied by
Supreme Court May 3, 1982
as to Hatchett.

William M. Leech, Jr., Atty. Gen., David M. Himmelreich, Asst. Atty. Gen., Nashville, Guy R. Dotson, Dist. Atty. Gen., Murfreesboro, for appellee.

Buddy D. Perry, Chattin, Perry & McBee, Winchester, for Cannon.

John G. Mitchell, Jr., Murfreesboro, for Hatchett.

## OPINION

O'BRIEN, Judge.

These defendants appealed from judgments rendered on guilty pleas in the Criminal Court for Rutherford County. Hatchett was sentenced to not less than two (2) nor more than five (5) years and fined the sum of Three Thousand Dollars ($3,000). Cannon was sentenced to serve one (1) year with a fine of Three Thousand Dollars ($3,000). Defendants reserved a question dispositive of the case under the provisions of Tennessee Rule of Criminal Procedure 37(b)(2)(i), and T.R.A.P. Rule 3(b)(1), relative to the search and seizure of certain evidence.

The defendant Hatchett says the trial judge erred in overruling his motion to suppress evidence obtained under a search warrant. The issue came about through information supplied to Metro Davidson County Police Officers, apparently from a police informant, to the effect that a certain residence in Rutherford County was the center of a marijuana selling operation of some considerable scope. As the result of this information Metro and Rutherford County Police Officers, acting in unison, placed the residence under surveillance resulting in the apprehension of defendants in possession of a considerable quantity of marijuana as well as a rather large sum of money. The principle contention made on behalf of defendant Hatchett goes to the adequacy and legality of the search warrant, and the verity of the affidavit to the warrant.

We wish to note that the intensity and depth of cross-examination on the part of counsel for the various defendants as well as the comprehensive and scholarly briefs filed have made this a very interesting case. Counsels' representation is commendable. It is argued that the affidavit to the search warrant is insufficient because it does not contain a date. The case relied on for this assertion is *Bentley v. State*, 552 S.W.2d 778 (Tenn.Cr.App.1977). Unlike the affidavit in *Bentley*, supra, the affidavit in this case is couched in the present tense and leaves no uncertainty about when the offense was committed in relation to the time the affidavit was sworn to. The affidavit is sufficient to establish that the information it referred to was not stale. It is not necessary to relate a calendar date. See *State v. McCormick*, 584 S.W.2d 821 (Tenn.Cr.App.1979), and the cases cited there. There is no doubt the language contained in the affidavit to the effect that several automobiles had pulled into the yard of said house within the past few minutes and that there was reasonable cause to believe a large traffic in illegal marijuana was being currently carried on in said house, was sufficient to establish the time the alleged offense was supposed to have occurred. The issue is without merit.

▆ Defendant additionally complains of other discrepancies in the warrant describing the premises to be searched as a white frame one-story house when in fact the color of the house was green and there was an upstairs. He also raises an unsupported claim about the address of the residence as stated in the affidavit. These matters were thoroughly explained in the testimony. The house, which was apparently pale green, appeared to be white at night, during the time the police were making their surveillance. The second story was discovered to be no more than a floored attic; and the address stated in the affidavit was found on a mailbox in front of the residence. The requirement of particular description of the place to be searched is met by a description which particularly points to a definitely ascertainable place so as to exclude all others, and enables the officer to locate the place to be searched with reasonable certainty without leaving it to his discretion. *Hatchett v. State*, 346 S.W.2d 258, 208 Tenn. 399 (1961). The description of the place to be searched is adequate if it designates the property with sufficient accuracy to prevent the officer from searching the premises of one person under a warrant directed against those of another. *Lee v. State*, 181 S.W.2d 351, 181 Tenn. 378 (1944).

▆ Defendant makes a number of generalized attacks on the affidavit to the warrant based on variations between the statements made in the affidavit and the testimony of the several officers involved brought out by the skillful cross-examination of counsel. On the strength of these he suggests that the statements in the affidavit were false or recklessly made in violation of the rule laid down in *State v. Little*, 560 S.W.2d 403 (Tenn.1978). After a thorough examination of this record and the affidavit to the search warrant, we have come to the conclusion that the affidavit to the warrant was facially sufficient to warrant its issue. Before a defendant can delve below the surface of a facially sufficient affidavit it must initially be shown by counter affidavit of persons having personal knowledge of the facts, or by other evidence, that the search warrant was procured by the officers either through perjury or collusion. The mere unsupported allegation of fraud is insufficient. In *United States v. Luna*, 525 F.2d 4 (6th Circuit, 1975), it was held that evidence should not be suppressed unless the trial court finds the warrant is obtained by actual fraud or collusion. An innocent or mere negligent representation is not sufficient to invalidate a warrant or nullify a search. We are of the opinion that a defendant must submit threshold prima facie evidence of grounds for an attack on a facially sufficient affidavit to a search warrant before he is entitled to a hearing on the validity of the affidavit and the warrant. *United States v. Luna*, supra.

The United States Supreme Court has held in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), that:

"... where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit."

We find that the affidavit to the search warrant established probable cause for its issue. The warrant is included in the record. It clearly shows that the affidavit does not contain any false statement which was intentionally made nor was there any reckless disregard for the truth included in the statement made by the affiant. It is

clear that all of the information contained in the affidavit was supplied by the officers in the course of their investigation, surveillance, and apprehension of the various defendants. The information obtained from the informant by the Metro Police Officer resulted in the initiation of the investigation and surveillance noted in the affidavit, and there is nothing in the affidavit to suggest any of the information it contains derived from any other source than the personal observation of the officers involved.

■ Hatchett further says one of the officers violated his reasonable expectation of privacy on his own premises by the use of a light intensifying device known as a "night scope". He cites numerous cases to sustain his position, none of which we find applicable to the facts involved here. Specifically, in *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the United States Supreme Court, citing from *United States v. Lee*, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927), states the proposition that "[what] a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." We do not think the use of the "night scope" alters the efficacy of the surveillance in this case. Officer Finchum of the Metro Police had stationed himself in a field or hedgerow across the road from Hatchett's dwelling. From that place of observation he was able to see through a lighted window into the house where he observed various of its occupants walking back and forth carrying ragged objects which appeared to him to be marijuana. There were placing these objects into large plastic bags. Their earlier information, which induced the police to set up the surveillance, was that the dwelling was the site of a large scale marijuana selling operation. Although the evidence in the record is less than satisfactory it appears that Mr. Finchum used the "night scope" to observe the traffic and activity on the outside of the dwelling. This device when trained onto a bright area of light, such as the lighted window, was constructed to spontaneously darken the lens in order to protect the delicate mechanism essential to its operation. This would make it of no value in surveying activity in the interior of the house.

In summary the evidence shows that Officer Finchum was a police officer with several years experience in the field of narcotic detection whose observation of the activities in and about the residence of the defendant Hatchett established sufficient probable cause for the issue of the search warrant. He additionally testified that about the time the officers were closing in with the warrant in hand he observed a great deal of frantic and hurried activity about the house as the occupants began to remove a number of large plastic garbage sacks from the house, and to load them into the various automobiles parked there. Much of this could be plainly seen by the other officers as they approached the house. When defendants were finally brought into custody the officers found nineteen of the bags in one vehicle, ten in another, and one bag in a third. Fourteen more bags were found inside the house. All were filled with marijuana.

■ Both Hatchett and Cannon contest the legality of Cannon's warrantless arrest and the search of the vehicle he was driving.

After Officer Finchum had observed the goings on heretofore set out he watched the defendant Cannon carry three of the large plastic garbage sacks out of the house and load them into the back seat of an automobile which he shortly drove away. He related this information to other officers participating in the surveillance operation who proceeded to follow Cannon. He was apprehended at a point just before he reached the interstate highway and placed in custody. The three plastic bags contained a total of approximately thirty pounds of marijuana. On the evidence we have read in this record we conclude that all of the essential elements of the automobile exception to the Fourth Amendment proscription against warrantless searches and seizures existed in this case. We have said there was probable cause for the issue of the search warrant. This would encompass probable cause for

the arrest of Cannon. Certainly his proximity to the interstate highway and his imminent departure from the jurisdiction provided the necessary exigent circumstances. In the recent decision in the case of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court made it clear that when a policeman has made a lawful custodial arrest of the occupants of an automobile he may, as a contemporaneous incident of that arrest, search the passenger compartment of the vehicle and may also examine the contents of any container found within the passenger compartment. Although the circumstances and events involved in this case preceded the decision in *Belton*, the case did not state any new constitutional principle and its retroactive effect insofar as these defendants are concerned is unquestioned. The evidence shows that the automobile actually was owned by a relative of Hatchetts'. It was being operated by Cannon apparently with Hatchett's authority. Whether or not Hatchett had standing to question the stop of the vehicle is immaterial. The police acted with reasonable cause and there was no error in the judgment of the trial court in upholding their conduct.

The judgment of the trial court is affirmed.

DWYER and BYERS, JJ., concur.