# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### March 1, 2011 Session

## STATE OF TENNESSEE v. BOB J. SPIVEY AND MISTY BUCKNER

**Direct Appeal from the Circuit Court for Dyer County**
**Nos. 09-CR-486; 09-CR-486A      Lee Moore, Judge**

---

**No. W2010-01853-CCA-R3-CD - Filed September 19, 2011**

---

The State appeals from the Dyer County Circuit Court's dismissal of two indictments charging the Defendant-Appellees, Bob J. Spivey and Misty Buckner, with possession with intent to sell or deliver more than 0.5 grams of a Schedule II controlled substance, a Class B felony. Both defendants moved to suppress evidence obtained during a police search of the Buckner home. The trial court granted these motions upon finding that the search warrant inadequately described the property to be searched, and the charges against Spivey and Buckner were dismissed. In this appeal, the State claims that the trial court erred by granting the motions to suppress. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT W. WEDEMEYER, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; C. Phillip Bivens, District Attorney General; and Lance E. Webb, Assistant District Attorney General, for the Appellant, State of Tennessee.

Noel H. Riley, II, Dyersburg, Tennessee, for the Defendant-Appellee, Bob J. Spivey.

James E. Lanier, District Public Defender; H. Tod Taylor, Assistant Public Defender, Dyersburg, Tennessee, for the Defendant-Appellee, Misty Buckner.

## OPINION

**Background**. Buckner and Spivey lived together at Buckner's home, one of two single-story buildings located at 506 Christie Street. The building Buckner rented was blue and the other building, rented by an individual unrelated to these proceedings, was tan. Upon

execution of a search warrant, the police found crack cocaine, a handgun, and a digital scale at the Buckner home. Buckner and Spivey were indicted and Buckner[1] filed a motion to suppress all evidence obtained during the search of the Buckner home. Buckner argued the search warrant was defective because it authorized the search of both rental buildings on the property.

**Suppression Hearing**. The search warrant, admitted into evidence as exhibit three, described the property to be searched as follows:

> 506 Christie Street is a single story, single family dwelling with tan siding. The residence can be found by traveling south on Main Street from downtown Dyersburg, TN. Continue south until reaching Christie Street. Turn west on Christie Street and 506 Christie Street sits on the northeast corner of Christie Street and Brigance Avenue.

The search warrant was accompanied by an affidavit signed by Officer Mason McDowell of the Dyersburg Police Department. The affidavit provided, in pertinent part, that an informant saw a controlled substance "inside the residence of 506 Christie Street." The informant reported that the residence belonged to Spivey. Buckner's name is not mentioned in the search warrant or the affidavit.

Patricia Sollis, the owner of the property at 506 Christie Street, testified that the property contained two buildings, 506 Christie ("the blue building") and 506 Christie Rear ("the tan building"). Sollis explained that when the search warrant was executed, Buckner lived in the blue building and another renter lived in the tan building. Sollis denied telling Officer McDowell prior to the execution of the search warrant that the tan building was not occupied by a renter. Sollis told Officer McDowell that the tan building was not occupied "a couple of months" before the suppression hearing. Sollis was certain it was after the search warrant was executed because "we didn't even know [about the execution of the search warrant] until we went out there and our door was broke in . . . . And at that time [her husband] called the police to see about getting the door replaced." She said the Register's Office listed the two buildings on her property as 506 Christie and 506 Christie Rear.

Prior to the search warrant application for 506 Christie Street, Officer McDowell conducted an online search of the property through the State of Tennessee Property Assessment Data Page. The search revealed that two buildings were listed under the address of 506 Christie Street. Officer McDowell examined the real estate assessment data provided by the State of Tennessee, which described the tan building as a "detached garage unfinished."

---

[1]Spivey's motion to suppress was not filed until after Buckner's motion to suppress was granted.

Officer McDowell said that he spoke with Sollis or her husband before the search warrant was executed to confirm that neither Buckner nor Spivey had access to the tan building. He stated that "from that point on he was not interested in the search of [the tan] property."

Officer McDowell conceded that he mis-read the satellite photograph and, as a result, the search warrant erroneously described the Buckner home as a tan building. Officer McDowell explained, "I could see in the satellite photography that the garage was tan. It was, I guess, my assumption that the residence was tan as well." Asked whether he had "passed by this residence and looked at it" prior to the search warrant, Officer McDowell replied:

> No, I had not specifically before we got ready to do this and that's strictly for surveillance reasons . . . I was familiar with the area. I was familiar with the house. I knew where it was but no, I did not go down there to get a color of it for fear of ruining our investigation.

Officer McDowell did not realize that there was a discrepancy in the color of the building in the search warrant. From his perspective, "there was only one single family dwelling located on the property and the second [building] was a detached garage." Officer McDowell believed, "barring the wrong color," he searched the residence described in the search warrant. He did not enter or search the tan building.

The trial court granted the motion to suppress by written order. The trial court excluded the evidence based on the following:

> The Court finds that the property was adequately described as 506 Christie Street. However, the officer made a mistake as to the color of the residence to be searched. Although Officer McDowell believed the rear building to be an undetached [sic] garage and states under oath that it was not his intention to search that area, the search warrant actually shows a tan building at 506 Christie. It is undisputed from Ms. Sollis'[s] testimony that the tan building was, in fact, being occupied by a renter in August of 2009. . . . It is clear to the Court that there was a slight mistake made in colors in this case. Otherwise the affidavit appears to be proper. If the property known as 506 Christie Rear had not had someone living there or if it was simply a garage the Court would feel that the description was adequate. The property is described accurately enough for the officer conducting the search to search the blue house. The description of the property in the warrant, however, is not sufficient to prevent the officers from searching the tan house at 506 Christie which would have been the premises of a totally different person. Although it is an unfortunate mistake and the Court hesitates to suppress evidence in this case, the Court does not feel that

Tennessee and United States Constitutional requirements are met so that the search warrant would be valid.

Following the grant of the motion to suppress, the trial court entered an order dismissing the indictment against Buckner. The order stated that the prosecution would be unable to proceed with its case without the suppressed evidence. Spivey later filed his motion to suppress based on the same grounds. The trial court granted Spivey's motion to suppress and entered an order dismissing Spivey's indictment. The State filed a timely notice of appeal and a motion to consolidate these two cases. This court determined that Buckner's and Spivey's cases involved common questions of law and fact; therefore, it granted the State's motion pursuant to Rule 16(b) of the Tennessee Rules of Appellate Procedure.

## ANALYSIS

The State claims the trial court erred by granting the motions to suppress. The State contends the search warrant's description of the property was adequate because it specified the location of Buckner's building on the property. The State also asserts that "any ambiguity in the description was cured by the executing officer's knowledge of the place to be searched." In response, Buckner argues that the search warrant was defective because it allowed the police to search both residences on the property, including the residence of someone who had no connection to the criminal investigation. She contends that Officer McDowell's knowledge of the property did not cure this defect because he was not informed that the tan building was occupied by a renter. Spivey claims the search warrant only authorized the search of a tan residence; therefore, the police were prohibited from searching the blue building where Buckner lived.

**Standard of Review**. The standard of review applicable to suppression issues involves a mixed question of law and fact. State v. Garcia, 123 S.W.3d 335, 342 (Tenn. 2003). "[A] trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Cox, 171 S.W.3d 174, 178 (Tenn. 2005) (quoting State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996)). The Tennessee Supreme Court explained this standard in State v. Odom:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those findings shall be upheld.

Odom, 928 S.W.2d at 23.

Both the federal and state constitutions require that a search warrant particularly describe the place to be searched. See U.S. Const., amend. IV; Tenn. Const., art. I, § 7. This requirement is codified under Tennessee Code Annotated section 40-6-103, which mandates that "[a] search warrant can only be issued on probable cause, supported by affidavit, naming or describing the person, and particularly describing the property, and the place to be searched." See also Tenn. R. Crim. P. 41(c) (stating that "the magistrate shall issue a warrant identifying the property and naming or describing the person or place to be searched"). The Tennessee Supreme Court has stated that the legislature's use of the word "particularly" in section 40-6-103 shows that the legislature "intended the search warrant to be clear of ambiguity as to the place to be searched." State v. Vanderford, 980 S.W.2d 390, 404 (Tenn. Crim. App. 1997) (quoting Dolen v. State, 216 S.W.2d 351, 353 (Tenn. 1948)).

In Vanderford, this Court discussed why the search warrant must describe with particularity the property to be searched:

> First, this requirement protects the accused from being subjected to an unreasonable search and/or seizure. Williams v. State, 196 Tenn. 630, 632, 270 S.W.2d 184, 185 (1954). Second, this requirement "prevent[s] the officer from searching the premises of one person under a warrant directed against those of another." Squires v. State, 525 S.W.2d 686, 690 (Tenn. Crim. App.), cert. denied (Tenn. June 9, 1975).

Id. In further addressing the particularity requirement, the Tennessee Supreme Court set forth the following test to determine whether a search warrant adequately described the place to be searched:

> The requirement of particular description of the place to be searched is met by a description which particularly points to a definitely ascertainable place so as to exclude all others, and enables the officer to locate the place to be searched with reasonable certainty without leaving it to his discretion.

State v. Smith, 868 S.W.2d 561, 572 (Tenn. 1993) (citing Hatchett v. State, 346 S.W.2d 258, 259 (Tenn. 1961); State v. Cannon, 634 S.W.2d 648, 650 (Tenn. Crim. App. 1982)). Moreover, "[t]he particularity requirement is satisfied if the place to be searched is described in such a manner that the officer conducting the search of the premises of one person under a warrant would be prevented from searching instead the premises of another person." State v. McCary, 119 S.W.3d 226, 247 (Tenn. Crim. App. 2003) (citations omitted); see also Lea

v. State, 181 Tenn. 378, 181 S.W.2d 351, 352 (1944) (noting that the place to "be searched should be designated with sufficient accuracy to prevent the officer from searching the premises of one person under a warrant directed against those of another"); State v. Bass, 153 Tenn. 162, 281 S.W. 936, 937 (1926) (concluding that the particularity requirement is met by a description which particularly points to a "definitely ascertainable place so as to exclude all others").

The State argues that the description in the search warrant was sufficient because the Buckner home, the blue building, was the only building located on the corner of Christie Street and Brigance Avenue. In support of its claim, the State argues the map of the property shows that the tan building does not border Christie Street. This argument is unavailing. As noted by the trial court, "[t]he property is described accurately enough for the officer conducting the search to search the blue house [the Buckner home]." However, this does not satisfy the particularity requirements of Bass, Vanderford, or Smith. The requirement of particularity means that the description must "particularly point[ ] to a definitely ascertainable place so as to exclude all others, and enable[ ] the officer to locate the place to be searched with reasonable certainty without leaving it to his discretion." Smith, 868 S.W.2d at 572 (citing Hatchett v. State, 346 S.W.2d 258, 259 (Tenn. 1961); State v. Cannon, 634 S.W.2d 648, 650 (Tenn. Crim. App. 1982)). In short, even though the search warrant provided an adequate description of the subject property, the same description enabled law enforcement to search another property, the tan building, that was occupied by someone unrelated to these proceedings in violation of that person's rights under the Fourth Amendment.

In the alternative, the State, citing State v. Larry Burks, No. E1999-00571-CCA-R3-CD, 2000 WL 1337175 (Tenn. Crim. App., at Knoxville, Sept. 18, 2000), contends that the defect in the search warrant was cured by Officer McDowell's personal knowledge that the defendants lived in the blue building. In Larry Burks, the search warrant directed the officers to search the defendant's tan mobile home. Id. at *2. The defendant's mobile home was actually a grayish color. Id. at *1. The defendant's brother owned a tan and white mobile home that was located two hundred feet away from the defendant's mobile home. Id. The defendant argued the search warrant failed to particularly describe his residence because the officers could have also searched his brother's mobile home. Id. at *3. In rejecting the defendant's claim, this Court concluded that the search warrant's error regarding the color of the defendant's mobile home was "insignificant." Id. Citing State v. Bostic, 898 S.W.2d 242, 246 (Tenn. Crim. App. 1994), and United States v. Williamson, 1 F.3d 1134, 1136, (10th Cir. 1993), this Court noted the executing officer "knew exactly which was the home of the defendant" and that the color description did not create the possibility that the officer would search the wrong home. Id.

Unlike Larry Burks, whether Officer McDowell had personal knowledge that Buckner and Spivey lived in the blue building is not borne out by the record. To be clear, the officer in Larry Burks testified at the suppression hearing that he personally knew the defendant, knew the defendant's whole family, and knew the exact location of the Burks' house because it was "right above [his] house about a half a mile." Larry Burks at *2. Here, although Officer McDowell was generally familiar with the location of the Buckner home, there was no testimony that Officer McDowell personally knew Buckner, Spivey, or where they lived. Officer McDowell's description of the property was based on faulty real estate data which described the tan building as a "detached garage unfinished." Based on the color of this building, Officer McDowell assumed that the Buckner home was also tan.

We further note that Officer McDowell testified that he spoke with Sollis or her husband to confirm that Buckner and Spivey did not have access to the tan building. However, Sollis insisted that she did not speak with the police until after the execution of the search warrant. Regardless of this discrepancy, the record shows that Officer McDowell had no personal knowledge of the subject property. Given these facts and circumstances, Larry Burks is not applicable to the present case.

Based on the above authority and analysis, we agree with the trial court, and conclude that the search warrant was unconstitutional because it failed to adequately specify the property to be searched. The search warrant described the residence as a single story, single family dwelling with tan siding located at 506 Christie Street on the northeast corner of Christie Street and Brigance Avenue. It failed, however, to distinguish the subject building from a second building on the property, the only one that was actually tan. This is fatal to the search warrant because it authorized law enforcement to search the tan building, which was occupied by a resident unrelated to the investigation. Accordingly, the State is not entitled to relief.

**CONCLUSION**

Based on the foregoing, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE